EXHIBIT A

## PLAINTIFF'S ADDENDUM TO THE PARTIES' REQUESTS IN UNIFORM CASE MANAGEMENT REPORT

The underlying principle in determining whether to grant or deny a stay of discovery is that "[t]he right to proceed in court should not be denied except under the most extreme circumstances." *Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc.*, 713 F.2d 1477, 1484 (10th Cir. 1983) (quoting Klein v. Adams & Peck, 436 F.2d 337, 339 (2d Cir. 1971)).

In other words, stays of the normal proceedings of a court matter should be the exception rather than the rule. As a result, stays of all discovery are generally disfavored in this District. *Chavez v. Young Am. Ins. Co., No*. 06BcvB02419BPSFBBNB, 2007 WL 683973, at *2 (D. Colo. Mar. 2, 2007) (citation omitted).

The Court *In re Winn Dixie Stores, Inc. Erisa Litigation*, noted that Eleventh Circuit case law, including *Chudasama* and its progeny, do not support "the implicit contention that discovery should be stayed whenever a defendant files a motion to dismiss." 304-CV-194J-33MCR, 2007 WL 1877887, at *2 (M.D. Fla. June 28, 2007).

In this case, as in *Chilcott Portfolio Mgmt. Inc.*, Defendants do not allege any extreme circumstances or raise any jurisdictional question. Defendants state only:

*"Due to the nature of the allegations and requested relief, Defendants respectfully request that initial discovery deadlines and dates are postponed until after the Court has ruled on Defendants' forthcoming Motions to Dismiss."*

This rationale for relief is clearly insufficient under *Kattell v. Brenntag Mid-South, Inc.*, Dist. Court, MD Florida 2019. The *Kattell* court stated, "Defendant provides no argument that the discovery in this case is unusually burdensome or costly, but instead seeks a stay based on the normal costs and burdens that come with discovery. . . Under the circumstances of this case, the Court finds that a stay pending ruling on the motion for judgment on the pleadings is not warranted."

Defendant's pleading is also insufficient under *String Cheese Incident*, 2006 WL 894955, at *2 (citing *FDIC v. Renda*, No. 85-2216-O, 1987 WL 348635, at *2 (D. Kan. Aug. 6, 1987)) which requires a 5-step analysis, none of which Defendants have provided.

When considering a stay of discovery, the court in *String Cheese* considered the following factors: (1) the plaintiff's interests in proceeding expeditiously with the civil action and the potential prejudice to plaintiff of a delay; (2) the burden on the defendants; (3) the convenience to the court; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.

Defendants however have provided no justification for their request to deny Plaintiff's timely discovery per *String Cheese*, nor have Defendants cited any authority on point that would authorize a broad stay of discovery.

Conversely, Plaintiff claims personal interest and damage as: (i) a widely-recognized expert in the field of emerging viruses, communicable diseases, and genetic engineering of drugs and vaccines by drug companies; and (ii) the pioneer and trademark holder on a competing broad spectrum antibacterial and antiviral non-drug therapeutic branded OxySilver$^{TM}$ resonating at a unique and beneficial frequency of 528Hz/nm. The Plaintiff also claims damages and deprivation of commercial rights arising out from Defendants' civil conspiracy to censor, smear, and marginalize the Plaintiff, resulting in the deprivation of Plaintiff's industry and right to free market commerce, so that Defendants could monopolize the Covid 19 prophylactic and/or therapeutic market.

Accordingly, Plaintiff pleads for injunctive relief as a party with standing who is being subjected to ongoing and irreparable harm, while advocating for society against the Defendants' alleged wrongdoings. Plaintiff does so individually, and as a humanitarian whistleblower. Plaintiff is an internationally-renowned consumer protector, informed-consent advocate, vaccination risk educator, and award-winning author of the best-selling book in the field of emerging viruses.

Plaintiff seeks timely discovery in part to determine if the twenty-four (24) percent of the FDA's expert commissioners opposing the Emergency Use Authorization ("EUA") of Pfizer and Moderna's "novel" mRNA vaccines for COVID were correct in assessing the little-known but substantial (even deadly) risks of this novel biotechnology—a "gene to-pharmaceutical" designated as a "drug," or "genetic therapy," yet advertised as a presumptive "safe and effective vaccine."

It is Plaintiff's contention that the risks of mRNA novel genetic therapy (as stated in Moderna's SEC 8k Prospectus versus its consumer advertising) outweigh the hastily-studied ("warp speed") widely publicized benefits of mRNA COVID "vaccines." Moreover, it is Plaintiff's contention that Defendants' actions, vis-a-vis Plaintiff, constitute unfair and deceptive trade and were carried out by Defendants with the intent to suppress Plaintiff's potential COVID 19 remedy, and thereby hold themselves out to the FDA as the only viable alternative therapy to COVID 19, thus securing the EUA and a virtual monopoly over this industry.

Given the facts, and these important, arguably urgent, questions to be answered in these proceedings, **limited discovery before summary disposition in this case is warranted** by the following analysis:

2

(1) The interest of the Plaintiff far surpasses any possible prejudice to the Defendants in proceeding expeditiously with discovery, wherein irreparable harm compounds daily to the Plaintiff and society by avoiding discovery focused on the genetic impacts (e.g., mutagenesis). These impacts risk public health, citizens' safety, and potentially even civilization's survival, due to increasing risks of COVID virus mutations (alleged to be exacerbated by Defendants' products) confronting humanity, and the emergence of increasingly "novel" viral recombinants already multiplying according to officials, and worsening daily at this time.

(2) Proceeding with Discovery would not be prohibitively burdensome on the Defendants (and their controlling shareholder companies) who are among the world's wealthiest. The early stages of this litigation favors limited discovery and constitutes a negligible burden. The expected extent of discovery, in-light-of the small number of parties and non-complexity of the issues in the case, is not substantially burdensome, and may well serve to prevent compounding irreparable harm to Plaintiff and society.

Defendants and/or their controlling shareholders have a criminal pattern and practice of covering up the risks of their products, bribing doctors, and intentionally injuring consumers.  Pfizer alone has been subject to over 4 billion in civil and criminal penalties since 2000.  See: "Justice Department Announces Largest Health Care Fraud Settlement in History, Pfizer to Pay $2.3 Billion for Fraudulent Marketing." Justice Dept. press release, Sept. 2, 2009.  Thus, allowance of immediate discovery will mitigate the likelihood Defendants will destroy or alter existing records essential to the fair and just adjudication of this matter.

 (3) The Court would not be inconvenienced at this early stage of these proceedings by permitting limited discovery of Defendants' genetic safety testing from which public health and safety assurances have been widely advertised by Defendants.

The Defendants have not responded thus far to the Complaint and are not expected to file any counterclaims since they seek summary dismissal.

Defendant Hearst has failed to waive service to appear but would likely join the other Defendants in seeking to delay discovery pursuant to its alleged anti-competitive, unfair, and deceptive publication in Popular Mechanics naming and irreparably harming Plaintiff, consumers, and society-at-large.

 (4) The social significance of this discovery to non-parties could not be greater since humanity's future, even threat of extinction, is risked by lacking discovery of the genetic science and impacts on human and viral genomes. These potentially devastating generational mutations are neither produced, nor threatened, by the Plaintiff's competing OxySiver$^{TM}$ alternative.

(5) The public interest strongly favors urgent and candid discovery since the social, economic, and health impacts of the Defendants' COVID biotechnology are novel and unprecedented. The Defendants' advertisements are knowingly false and/or reckless in misrepresenting the science, the facts, and are causing ongoing and irreversible harm.

Additional factors to be considered in favoring pre-motion discovery in accordance with *Hachette Distrib., Inc. v. Hudson Cnty. News Co.*, 136 F.R.D. 356, 358 (E.D.N.Y. 1991) and Lynch's review in *Wake Forest Law Review*, 2012, include a: "case-by-case analysis is required, since such an inquiry is necessarily fact-specific and depends on the particular circumstances and posture of each case. Lynch KJ. When staying discovery stays justice: Analyzing motions to stay discovery when a motion to dismiss is pending, *Id*.

In the case at bar, the Plaintiff seeks injunctive relief for self and society against anti-competitive actions of the Defendants that include misrepresenting and omitting scientifically-determined risks of their mRNA products. The Plaintiff seeks relief to enjoin irreparable harm to himself, his businesses, his reputation, and to consumers, caused by Defendants' global enterprise which is being advanced by concealment rather than candor.

In summary and conclusion, Federal courts frequently remark that Rule 26(c) discovery stays are disfavored. Consistent with this prevailing view, courts strictly apply the good cause requirement. See, e.g., *Buckwalter v. Nevada Bd. of Med. Examiners*, No. 2:10-cv-02034-KJD-GWF, 2011 AI 841391, at *1 (D. Nev. Mar. 7, 2011) ("A party carries a heavy burden of making a 'strong showing' why discovery should be stayed."); *Stone v. Lockheed Martin Corp.*, No. 08- cv-02522-REB-KMT, 2009 WL 267688, at *1 (D. Colo. Feb. 2, 2009) (quoting *Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc.*, 713 F.2d 1377, 1484 (10th Cir. 1983)).

Defendants have not demonstrated good cause for their requested stay. They have provided no diligent argument that proceeding with the discovery process presents an undue burden, and have made no claim they require a stay of discovery to protect them against annoyance, embarrassment, oppression, or undue burden or expense. In fact, Defendants have not alleged any good cause for seeking a stay, and therefore in the interest of justice, their request should be denied.