FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA 29 PM 2: 15
FORT MYERS DIVISION

LEONARD G. HOROWITZ,
Plaintiff,

vs.                                        Case No. 2:20-cv-00955-JLB-NPM

PFIZER INC., et al.,
Defendants.
_____/

## PLAINTIFF'S OPPOSITION TO DEFENDANT SCHEIN's MOTION TO DISMISS

Plaintiff, Dr. Leonard G Horowitz, hereby submits his opposition to Defendant Henry Schein's Motion to Dismiss the Complaint. Plaintiff meets the standards governing the form of a complaint contemplated by Federal Rule of Civil Procedure 8(a), this Court has subject matter jurisdiction in this matter, and the Complaint sufficiently alleges harm and damage to Plaintiff. Accordingly, Defendant Schein's Motion should be denied.

## I. INTRODUCTION

Beginning in the 1980s to the present, the Department of Defense and its contractors began work on what is described as the "most dauting obstacle"—bridging the gap between biology and electronics. For decades, the scientific consensus was that this gap was insurmountable, given the "stark disparities between the two realms." Then (at an undisclosed time) the Defense Advance Research Projects Agency ("DARPA") "hit" upon the idea of using modified "nanogels" to conduct electricity through biologic tissue. This alleged DARPA derived science, provided renewed hope to a languishing "bioelectronic" industry, that a solution to bridge the gap between biology and electronics was indeed possible. (**Exhibit 1**)

1

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LEONARD G. HOROWITZ,
Plaintiff,

vs.                                    Case No. 2:20-cv-00955-JLB-NPM

PFIZER INC., et al.,
Defendants.
_____/

## PLAINTIFF'S OPPOSITION TO DEFENDANT SCHEIN's MOTION TO DISMISS

i

# TABLE OF CONTENTS

I.    INTRODUCTION...........................................................................1

II.   STATEMENT OF FACTS.............................................................3

III.  FEDERAL SUBJECT MATTER JURISDICTION........................10

IV.  FED. R. CIV. P. 8(a)(2): Concisely Why Plaintiff is Entitled to Relief..........11

V.   SCHEIN IS A STATE ACTOR ACTING UNDER COLOR OF LAW ........12

VI.  SCHEIN AND HEARST CONSPIRED TO SUBSTANTIALLY BURDEN PLAINTIFF'S FREE EXERCISE.....................................14

    A. FREE EXERCISE CLAUSE..................................................14

    B. RFRA..................................................................................14

        1.   Substantial Burden........................................................15
        2.   Defendants' Damaging Actions have been Continuous and are Ongoing..........................................................16

VII. UNFAIR TRADE PRACTICES ACT (FDUTPA), F.S. §§501.201 et seq......17

    A. IRREPARABLE HARM TO PLAINTIFF ................................17

    B. PLAINTIFF CLAIMS NOT PREEMPTED BY FEDERAL LAW...........18

VIII. STATUTE OF LIMITATIONS........................................................18

IX.  CONCLUSION.............................................................................18

    DECLARATION OF LEONARD G. HOROWITZ..................................21

    CERTIFICATE OF SERVICE.........................................................22

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

LEONARD G. HOROWITZ,
Plaintiff,

vs.                                          Case No. 2:20-cv-00955-JLB-NPM

PFIZER INC., et al.,
Defendants.
_____/

## PLAINTIFF'S OPPOSITION TO DEFENDANT SCHEIN's
## MOTION TO DISMISS

Plaintiff, Dr. Leonard G Horowitz, hereby submits his opposition to Defendant Henry Schein's Motion to Dismiss the Complaint. Plaintiff meets the standards governing the form of a complaint contemplated by Federal Rule of Civil Procedure 8(a), this Court has subject matter jurisdiction in this matter, and the Complaint sufficiently alleges harm and damage to Plaintiff. Accordingly, Defendant Schein's Motion should be denied.

## I.  INTRODUCTION

Beginning in the 1980s to the present, the Department of Defense and its contractors began work on what is described as the "most dauting obstacle"—bridging the gap between biology and electronics. For decades, the scientific consensus was that this gap was insurmountable, given the "stark disparities between the two realms." Then (at an undisclosed time) the Defense Advance Research Projects Agency ("DARPA") "hit" upon the idea of using modified "nanogels" to conduct electricity through biologic tissue. This alleged DARPA derived science, provided renewed hope to a languishing "bioelectronic" industry, that a solution to bridge the gap between biology and electronics was indeed possible. (**Exhibit 1**)

With DARPA seed financing assured, University researchers and transnational corporations began work to develop the modified "hydrogel" industry (MHI). The World Economic Forum (WEF), as cheerleader, began publishing videos and white papers heralding the imminent integration of humans with intelligent machines, made possible by the emergence of DARPA's MHI. Proponents and critics agreed, being "human" would no longer be scientifically definable. This controversial biosynthesis was termed "transhumanism."

Plaintiff became aware of Defendants' transhumanist agenda in 2019, but his focus stayed on utilizing his religiously-inspired product, "Oxysilver™ with 528" for the benefit of humanity. Though Plaintiff became a target for vaccine industry invective, as a religious leader, a recognized expert on emerging diseases, and an outspoken critic on the misuse of vaccinations, it was not until late 2019 that Plaintiff began to understand the nature and the reason for Defendants' specific attacks on his products and his Judeo-Christian ministry.

Plaintiff had published at length on the use and abuse of bioelectronic frequencies. But it was not until 2019-2021 that Plaintiff realized Defendants were not only intending to misuse and disparage healing frequencies of sound and light, such as 528Hz/nm (i.e., a "key" frequency in bioelectronics and "intelligent design"), but intended to combine that misuse into vaccine hydrogels using nano-silver and structured water, as Horowitz had pioneered doing in 2006 through 2008.

Defendants' misuse of the Creator's "intelligent design" goes to the heart of Plaintiff's divinely-inspired works in health science and clinical care; and it now triggers Plaintiff's prophetic warning of what will occur if this technology is not deployed in service to humanity's free and natural sustainability.

Therefore, this lawsuit is Plaintiff's best effort to inform the Court how Defendants' actions have specifically injured his religious ministry, as well as to warn the

world how Defendants' godless approach to biosynthesis, if not curtailed, will have dire consequences.

## II.  STATEMENT OF FACTS

Beginning in the 1980s to the present, Plaintiff has written extensively, and lectured nationally and internationally on bioelectric therapies and their synergistic effects with "structured water" ("sH$_2$O") and nano-silver.

By 2008, this work led to Plaintiff's invention, manufacture, and worldwide distribution of "OxySilver$^{TM}$ with 528" that pioneered a new paradigm in clinical care and commerce.

OxySilver$^{TM}$ with 528 featured structurally-engineered water that was 'wetter' than most waters, meaning the water would carry and transmit to human cells more micronutrients, such as anti-microbial silver, as well as drugs when desired.

Moreover, Horowitz's decision to energize the sH$_2$O with expressly the 528Hz/nm frequency of sound and light to bio-energetically empower his remedies merged medicine and religion, biophysics and spirituality, challenging the pharmaceutical industry to invest heavily in similar research and developments beginning nearly a decade or more later.

Plaintiff's products arose from a millennial-long tradition of religious teaching and are proffered by Plaintiff (who is a Levitical Priest), based on his deep understanding of religious doctrine and the concomitant insight that understanding provides with respect to health products and services. The centrality of these religious teachings involve 'intelligent design,' nature's inherent (musical-mathematical) basis in structuring organic molecules and chemistry; Plaintiff's businesses, products, and practices. This fact is confirmed textually in the Tanakh, comprised of the Pentateuch (Torah), the Nevi'im (the Prophets), the Ketuvim (Writings), and in the Plaintiff's many published books.

Dozens of Plaintiff's scientific peer-reviewed publications have reached international audiences and several of his books have become trademarked best-sellers that have been quoted widely by such luminaries as President Obama's minister, Reverend Jeremiah Wright.

Plaintiff's "528 Radio Network", with more than a dozen stations broadcasting different genres of music transposed into the frequency of 528Hz, is enjoyed by a large and growing international audience. The free service (at 528Radio.com) is claimed to be "therapeutic" and advertises "OxySilver™ with 528" as a "Holy Water." From Horowitz's Bible and scientific studies, the Plaintiff claims "528" is the "key of the house of David" (Isaiah 22:22; Rev. 3:6-8) to which King David tuned his "healing harp."

Contrary to naysayers and skeptics, leading drug industrialists, including Defendants Schein, Pfizer and Moderna, are increasingly researching and developing products (such as modified ag-hydrogel composites) which are based on the frequencies of sound and light to accomplish therapeutic outcomes, and compete directly against the Plaintiff's commercial interests. (See: **Exhibits 2 - 5.**)

Defendant Schein's CEO, Stanley Bergman, is personally aware of Plaintiff's religious beliefs, publications, and Plaintiff's novel bioelectronic products and health oriented educational services, since Plaintiff engaged in multiple conversations on this subject with Mr. Bergman, his company president, Jimmy Breslawski, and director of new product acquisitions and marketing, Gail Koenigsburg.

Plaintiff avers Defendant Bergman (Schein) determined to crush Plaintiff's alternative narrative in the healthcare industry, including bioelectronic (a.k.a., "biospiritual") alternatives to hydrogels and pharmaceuticals. Additionally, in order to maintain a secular (i.e. "scientific") marketing narrative, Schein, in concert with media partner Hearst, engaged in a series of preemptive attacks against Plaintiff personally, religiously, and commercially, resulting in the deprivation of Plaintiff's constitutional

4

right to the free exercise of his religion, including 'religious commerce' advancing the
bioelectronic/biospiritual product OxySilver™ with 528.

These preemptive attacks by Schein and its partner, Hearst Media, are evidenced in:

1. *Global News* (Hearst's partner with owner Corus). The **Exhibit 6** article
smeared Horowitz and his 528Hz frequency-based 'medicinal music' on May 13, 2018.

2. *Forbes* magazine, on December 10, 2016 attacked Plaintiff's religion and
religious-based natural products were specifically identified and disparaged.[1] (**Exhibit 7**)

3. *WIRED* magazine (Conde Naste Health Pharma and joint-venturer with Hearst)
on February 9, 2016 in which Defendants state their intention to infiltrate and disrupt
Plaintiff's activities. (**Exhibit 8**)

4. *Popular Mechanics* (Hearst Media) attack on August 17, 2016 in which Plaintiff
was disparaged ad hominem and OxySilver™ with 528 misrepresented. (**Exhibit 9**)

Defendants Schein and Hearst jointly operate Schein's Health Care Division,
utilizing Schein's MicroMD® Patient Portal and Hearst's First DataBank
("FDB").(**Exhibit 10**)

---

[1] On December 10, 2016, Forbes revised and referenced Hearst's *Popular Mechanics* feature article. Forbes embellished Hearst's coverage publishing that Horowitz is "trying to sell treatments that compete with existing treatments approved and supported by legitimate government agencies such as the Food and Drug Administration (FDA) and the scientific community." To the contrary, Horowitz draws from the scientific community to advance novel products that compete against pharmaceuticals. Forbes added, "Len Horowitz" "describes himself as the "King of Natural Healing." That is false. The Plaintiff has never described himself as the "King of Natural Healing." Horowitz has been described by others as the "King David of Natural Healing." Forbes intentionally deleted the reference to "King David" to deny Horowitz's religious identity, divert from Horowitz's 528 bio-electric "key of the house of David" musical revelations, and offend others leading the natural healing community. *Forbes* also disparaged, Horowitz "has been trying to sell an herbal cream that he claims will make skin cancer fall off your body in less than 3 weeks." That is false. The referenced product is a "black salve," not a cream. Further, the salve has been successfully used by health professionals internationally for more than a century to prompt immunological rejections of otherwise growing, potentially deadly, skin cancers. (See: **Exhibit 7**)

5

According to *Wikipedia*, FDB Hearst is integral to Schein's pharmacy dispensing, formulary management, drug pricing analysis, claims processing, computerized physician order entry (CPOE), electronic health records (EHR), electronic medical records (EMR), electronic prescribing (e-Prescribing), electronic medication administration records (EMAR), population health and telemedicine/telehealth. (https://en.wikipedia.org/wiki/First_Databank)

MicroMD, in combination with Hearst's FDB, provides the core functionality for Schein's data management division (Technology and Value Added Services) central to Schein's marketing of its bioelectronic products competitive with Plaintiff. (See: https://www.henryscheinsolutionshub.com/ product/micromd/)

In addition, according to Businesswire.com, both Schein (Cardinal Health Inc.) and Hearst Health Ventures worked in tandem to jointly finance Aver Inc. Aver's strategic patent for a simplified healthcare reimbursement process have provided Schein and its financial partner, Hearst Health Ventures, with the data platform capability to wrest market share from Plaintiff and similarly situated small and mid-market competitors.[2]

In this way, Defendant Schein, Hearst Media, and Galvani BioElectrics/Pfizer/GSK, (**Exhibits 1- 5**) through their interlocking agents and publications (*WIRED* magazine/Conde Nast/Hearst Media/Popular Mechanics/*Forbes*/Forbes Health Summit, inter alia, acted to: (a) hide their conspiracy in attacking Plaintiff; (b) represent as "novel" their approach to therapies featuring Plaintiff's pioneering work to develop and market bioelectronic nano-silver products featuring structured $H_2O$ and (c) subvert Plaintiff's evolutionary "528" frequency water

---

[2] See: https://www.businesswire.com/news/home/20200109005738/en/Cox-Enterprises-Invests-in-Aver%E2%80%99s-27M-Series-C-to-Accelerate-Implementation-and-Execution-of-Value-based-and-Bundled-Payments-Programs

memory technology for their own nefarious purposes with respect to modified hydrogel composites *inter alia*.

Plaintiff also alleges that based on his employment with Henry Schein, Schein, as well as Schein's Defendant partners, had personal knowledge of Plaintiff's businesses, knew Plaintiff's approach to ag-hydrogel modification was alternative to their own, and have engaged and continue to engage in a conspiracy utilizing the resources and inter-connections of the Pandemic Supply Chain Network to destroy Plaintiff's business reputation, religious practice, and livelihood. Defendants' published invectives, masquerading as objective reviews of Plaintiff's products, explicitly target Plaintiff's religious identity, doctrine, and commerce. (See footnote 1.)

It is Plaintiff's contention that Defendants' interference with Plaintiff's religious commerce was not due to Plaintiff's opposition to traditional vaccine platforms (as Plaintiff initially surmised), but for the purpose of marginalizing Plaintiff's alternative to silver-hydrogel technology. In this way, Defendants' conspired to minimize Plaintiff's ability to impact their carefully constructed narrative, regarding the benefits of novel biologics (the genetic gateway to transhumanism), which Defendants knew was made possible by their conversion of Plaintiff's 528-resonating silver-hydrosol technology. This interference with the Plaintiff's reputability, commercial viability, and Christian-science narrative was vitally important for their upcoming roll out of Defendants' bioelectric nano-silver products featuring likewise engineered $H_2O$. Defendants' use of hydrogel-infused modified water and silver, bioelectrically transmitting frequencies of sound and light energy, effectively converts the Plaintiff's discoveries and intellectual property into Defendants' pharmaceutical-bioenergetic narrative. (See **Exhibits 11 – 13.**)

It is unreasonable to dismiss these facts and conspiratorial scheme because Defendant Schein, for no less than 14-years, has been actively involved in the marketing and distribution of bioelectric medicine. (**Exhibits 2-3**) In 2006, the year Horowitz first

integrated OxySilver™ (bonding structured water with nano-silver and 528 frequency technologies) to serve as an electro-chemical immune-boosting anti-oxidant, Defendant Schein entered into an exclusive contract with BioElectric Corp to distribute Acti-Patch, advertised by Schein as "Advanced Bio-Electric Healing Technology" that applies "pulsed electromagnetic field therapy." (See: **Exhibit 2**, SEC, Registration No. 555-136602, Dec. 6, 2006)

Schein is also the current distributor of BioWave, a neurostimulator for pain relief. (**Exhibit 3**)

Both Acti-Patch and BioWave are primitive versions of what Defendants are advancing with silver-impregnated hydrogels--technology that is based on Plaintiff's unique approach to silver–hydrosol composites for "soft [tissue] electronics". Hydrogel functionality is akin to OxySilver's impact in 528-bioelectric-field therapies leveraging specific frequencies of sound and light that resonate within the hydrated matrix, that then message cells to repair.

While Defendant Schein wishes to characterize the focus of this lawsuit as limited to Covid 19 vaccines, the RFRA, 42 USC 1983 and FUDPTA questions arise out from Plaintiff's 2000 copyright on the text *Healing Codes for the Biological Apocalypse* (TX0005256671/ 2000-08-09; **Exhibit 14**) largely responsible for this bioelectric technology, and Plaintiff's three decades of research, writing, and product developments relating to bioelectric fields and therapies using nano silver-water bonding.

Though Plaintiff admits that at this time, Plaintiff's market share presents little concern to Defendants, Plaintiff's characterization of Defendants' mis-guided approach to bioelectrics constitutes an imminent and material threat to Defendants. The Plaintiff's large and growing international audience threatens Defendants' Pandemic Supply Chain Network's plan for the future of medicine, (**Exhibit 15**) which envisions the transition from a systemic molecular approach to targeted bioelectronic hydrogels. (**Exhibits 11** and **12**)

Pursuant to Title 42 U.S.C. § 1983 (2000), as detailed below, the year before the NBSA was enacted, and subsequent research by Harvard's Charles Lieber and his protégés converted Horowitz's OxySilver bioelectric nano-technology to commercial hydrogel applications, Defendant Schein founded the Global Pandemic Supply Chain Network (PSCN), and became this enterprise's leading United States coordinator. (**Exhibit 15**)

PSCN is a traditional bio-defense public function, and its effective establishment and functioning within the territory of the United States required and continues to require Schein's entanglement and entwinement with the Federal Government and the United States Department of Defense. (**Exhibit 15**)

It is also noteworthy that among Defendants Moderna and Pfizer's benefactors is the U.S. Defense Department's Defense Advanced Research Projects Agency (DARPA), that operates to a large extent covertly, due to concerns for "National Security." Though Defendants Hearst/Schein's attacks against Plaintiff began in "FY2016," it was not until 2019 (two months before the revealing "Event 201" coronavirus predictive programming conference involving Schein) when DARPA announced its funding of Profusa's hydrogel biosensors to detect disease outbreaks. (**Exhibit 16**) That prompted Plaintiff to consider the National Biodefense Strategy Act (NBSA) of 2016's connections to Moderna's and Pfizer's key hydrogel nano-silver bioenergizing technology that is generally concealed from public discourse. (See **Exhibits 17, 18 and 19**)

This lacking scientific transparency extends to federally-indicted Harvard professor Lieber, who "knowingly and willfully made materially false, fictitious and fraudulent statements to DoD [and similarly to the NIH] in violation of 18 U.S.C. § 1001(a)(2)" according to his federal indictment. (See: Criminal Complaint in **Exhibit 17**). **Exhibits 12 and 13** evidence Lieber's main area of research and developments in the field of silver-impregnated hydrogels. (**Exhibit 18**) Lieber played a key role in

9

developing silver-water hydrogels made to "meld tiny electronics with the brain,"
explained *NPR*. (**Exhibit 19**)

NBSA also authorized the Defense Department to engage academics and private
corporations to initiate media campaigns targeting religious group leaders and their
followers espousing alternatives to pharmaceutical narratives considered to be among the
leading "risks associated with major biological incidents." National Security is
purportedly threatened by the untrusting public, and this distrust was prioritized to be
neutralized, as exemplified by Horowitz's persecution. (See: **Exhibit 20**)

Thus, Plaintiff alleges it is Defendants' strategy to disparage and bankrupt Plaintiff
by maligning his religiously-informed and bio-spiritually oriented products, so if by some
chance Plaintiff tried to defend himself and his enterprise in federal court, he would need
to do so *pro se*, where the chance of surviving a motion to dismiss would be infinitesimal.

## III.  <u>FEDERAL SUBJECT MATTER JURISDICTION</u>

The subject matter of this case involves federal questions per 28 USC 1331 as
Defendant Schein, under color of law, interfered with Plaintiff's free exercise of his religious
beliefs in contravention of the 1st Amendment of the United States Constitution. Defendant
has also caused Plaintiff injury by disparaging his religion, his religious products, and
religious commerce, in violation of RFRA, a federal statute.

Though this matter raises both state and federal issues, Plaintiff contends the
hybrid law issue should be resolved in favor of federal jurisdiction, given Defendants'
violations of Plaintiff's constitutional rights supersede Plaintiff's state claims.
Additionally, the weight of federal authority is that when fairness dictates claims against
federal actors they should be adjudicated in federal court.

The court may dismiss a complaint for lack of subject-matter jurisdiction only if
"'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

which would entitle him to relief.'" *Empagran S.A. v. F. Hoffman-Laroche, Ltd.*, 315 F.3d 338, 343 (D.C. Cir. 2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

IV. <u>**FED. R. CIV. P. 8(a)(2): Concisely Why Plaintiff is Entitled to Relief**</u>

Per Fed. R. Civ. P. 8(a)(2), Defendant Schein, in coordination with its partner and Co-Defendant Hearst Health,[3] and Conde Nast (*WIRED* magazine) published and continues to publish false disparaging information regarding Plaintiff's religious businesses and products. (See **Exhibit 8**) This public disparagement of Plaintiff, by Schein's partner Hearst Health, benefitting Schein's prospective bioelectronic hydrogel products (which competes for *mindshare* with Plaintiff's alternative), constitute violations of RFRA, 42 USC 1983 and FUDPTA and entitles Plaintiff to relief in this Article III court (42 U.S. Code CHAPTER 21B—RELIGIOUS FREEDOM RESTORATION, 42 U.S.C. § 1983, Unfair Trade Practices Act (FDUTPA), F.S. §§501.201 et seq.).

The Supreme Court has explained that a complaint need only "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema* N.A., 534 U.S. 506, 512 (2002); accord *Atchison, Topeka & Santa Fe Ry. v. Buell*, 480 U.S. 557, 568 n.15 (1987) (under Federal Rule 8, claimant has "no duty to set out all of the relevant facts in his complaint"). "Specific facts are not necessary in a Complaint; instead, the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Epos Tech.*, 636 F. Supp.2d 57, 63 (D.D.C. 2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)).

As courts throughout Florida have consistently held, Twombly and Iqbal do not change the fundamental analysis that a district court engages in and when ruling on a motion to dismiss, i.e., accepting all plausible allegations as true and determining whether the complaint contains a short and plain statement of the claim showing that the pleader

---

[3] Schein's partnership with Hearst Health is evidenced by **Exhibit 10**.

is entitled to relief. *Smith v. Wm. Wrigley Jr. Co.*, 663 F.Supp.2d 1336, 1341 n. 3 (S.D. Fla. 2009).

The issue for consideration on a motion to dismiss is not whether the plaintiff will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." *Little v. City of North Miami*, 805 F.2d 962, 965 (11th Cir. 1986). If a defect can be cured by amendment, leave to amend should be freely granted. *Forman v. Davis*, 371 U.S. 178, 182 (1962); *Ferrell Law, P.A. v. Crescent Miami Center, LLP*, 313 Fed. Appx. 182, 186 (11th Cir. 2008); Fed. R. Civ. P. 15(a)(2) Thus, the Federal Rules embody "notice pleading" and require only a concise statement of the claim, rather than evidentiary facts.

Accordingly, Defendant's Motion would be considered properly filed only "where a plaintiff's complaint is 'unintelligab[le] (sic),' not where a complaint suffers for 'lack of detail.'" *Epos Tech.*, 636 F. Supp. 2d at 63 (citations omitted). The simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and to dispose of unmeritorious claims. See *Swierkiewicz*, 534 U.S. at 512. Indeed, courts have found that if the information sought by the motion is obtainable through discovery, the motion should be denied. See, e.g., *Towers Tenant Ass'n v. Towers Ltd. P'ship*, 563 F. Supp. 566, 569 (D.D.C. 1983) (denying motion for a more definite statement because details such as "dates, times, names and places" are "the central object of discovery, and need not be pleaded").

## V.  SCHEIN IS A STATE ACTOR ACTING UNDER COLOR OF LAW

As introduced above, Defendant Schein is a state actor based on the 'three exceptions' to the 'State Action Doctrine.' Those exceptions are *public function*, *entanglement*, and *entwinement*. (*Milner v. Plukerbert*, Supreme Court of the United

12

States, No. 17-874, Brief for Respondent, January 31, 2020.) These three exceptions justify treating the Defendant as the government itself, in this particular instance.

To reiterate, Defendant Schein, beginning in 2015, founded the Global Pandemic Supply Chain Network (PSCN) at the WEF, and is this enterprise's leading United States coordinator. PSCN is a traditional bio-defense public function, and its effective establishment and functioning within the territory of the United States, required and continues to require, Schein's entanglement and entwinement with the Federal Government and the United States Department of Defense. (**Exhibits 15 and 16**)

Quoting in relevant part a Businesswire press release sourced by Schein:

The PSCN, co-founded by Henry Schein, is a public-private initiative that brings together the private sector and global organizations – including the World Health Organization, World Economic Forum, the United Nations World Food Programme, the World Bank, the U.S. Centers for Disease Control, UNICEF, and approximately 60 health care manufacturers and suppliers – to embrace . . . operational coordination for health care products to more effectively match global demand with global supply. . . . enabling the sharing of information and facilitating the ability of key stakeholders to navigate together the supply chain challenges caused by global pandemics. (**Exhibit 21**)

Defendant thus acts under color of law; and while acting under color of law, deprived Plaintiff of his constitutional right to the free exercise of his religion and religious commerce in competing bio-defense oriented products and services.

"Under the Color of State Law" in 42 U.S.C. section 1983 Title 42 U.S.C. liability is imposed on every person who, under the color of a statute, ordinance, or regulation, causes the deprivation of another's federally protected right. 42 U.S.C. § 1983 (2000).

Acting with the "authority of [the] state" applies to both governmental entities and private parties acting in concert with state officers to deprive another of their constitutionally guaranteed liberty. See 14 C.J.S. Civil Rights § 30 (2007).

The Supreme Court noted that the determination of whether conduct is private or amounts to "state action" is not an easy question and there is no singular fact that is a

13

"necessary condition.., for finding state action." The important inquiry, therefore, is the interplay of the government and private actions in light of the particular facts of a case. *Gilmore v. City of Montgomery*, 417 U.S. 556, 573 (1974) (citing *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 725 (1961)).

## VI. SCHEIN AND HEARST CONSPIRED TO SUBSTANTIALLY BURDEN PLAINTIFF'S FREE EXERCISE

Plaintiff alleges the existence of a conspiracy involving Schein and Hearst as co-conspiring state actors, and with other Defendants as parties to that conspiracy, that deprived Plaintiff's free exercise of religion.

"In order to prevail on a conspiracy claim under § 1983, a Plaintiff also asserts that persons acting under color of state law conspired to deprive him of a federally protected right."; *Marchese v. Umstead*, 110 F. Supp. 2d 361, 371 (E.D. Pa. 2000) ("To state a section 1983 conspiracy claim, a plaintiff must allege: (1) the existence of a conspiracy involving state action; and (2) a depravation [sic] of civil rights in furtherance of the conspiracy by a party to the conspiracy."); see also *Avery, Rudovsky & Blum*,7 Instructions 12:31, 12:32, 17 12:33, & 12:43 (providing suggested instructions regarding a Section 1983 conspiracy claim).

### A. FREE EXERCISE CLAUSE

The Free Exercise Clause provides that "Congress shall make no law . . . prohibiting the free exercise [of religion]."

"'[I]f the purpose or effect of a law is to impede the observance of one or all religions or is to discriminate invidiously between religions, that law is constitutionally invalid even though the burden may be characterized as being only indirect.'" *Sherbert v. Verner* 374 U.S. 398 (1963)

### B. RFRA

(a) IN GENERAL

14

Government shall not substantially burden a person's <u>exercise of religion</u> even if the burden results from a rule of general applicability, except as provided in subsection (b).

(b) EXCEPTION Government may substantially burden a person's <u>exercise of religion</u> only if it <u>demonstrates</u> that application of the burden to the person—

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest.

Accordingly, RFRA provides that the "[g]overnment shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability," unless the government demonstrates a "compelling governmental interest" and uses the "least restrictive means" of furthering that interest. 42 U.S.C. § 2000bb-1(a),(b); *Holy Land Found. for Relief and Dev. v. 9 Ashcroft*, 333 F.3d 156, 166-68 (D.C. Cir. 2003).

To establish a prima facie case under RFRA, a plaintiff must show that the government action "has placed a substantial burden on the observation of a central religious belief or practice." *Henderson v. Kennedy*, 253 F.3d 12, 17 (D.C. Cir. 2001) (recognizing that "'substantial burden' in RFRA is what the Supreme Court had in mind in its pre-Smith opinion in Jimmy Swaggart Ministries v. Bd. of Equalization, 493 U.S. 378, 384-85 (1990)").

## 1. **Substantial Burden**

Defendant Schein with Hearst, and their agents, acting in concert and under color of law, explicitly identified and targeted Plaintiff by name and specifically maligned Plaintiff's businesses, products, and religious beliefs in their national publications. Defendants actions, designed to attack Plaintiff's OxySilver$^{TM}$ with 528 frequency (an alternative approach to bioelectronic medicine) substantially burdened the central tenant of Plaintiff's religious belief and practice.

15

Defendant Schein/Hearst's intent to individually target and harm Plaintiff's OxySilver™ with 528HZ frequency is evidenced by:

1. An article in *Forbes Magazine,* published on December 10, 2016, that is linked to Hearst's *Popular Mechanics* article in which Plaintiff's religious products were specifically identified and disparaged.[4]

2. *WIRED Magazine* ( on February 9, 2016 Defendant Hearst/Schein agent, "Researcher" Collin McRoberts of Stratfor Intelligence (aka "Shadow CIA") (https://www.huffingtonpost.ca/2013/12/15/stratfor-canadian-government_n_4449505.html published his intention to infiltrate and disrupt Plaintiff's activities. (**Exhibit 5**) *WIRED* owner's Conde Naste is in partnership with Hearst Media via PubWorX.

3. *Popular Mechanics* (Hearst Media) attack on August 17, 2016 in which Plaintiff was disparaged ad hominem with an anti-Semitic slur. (**Exhibit 6**)

4. *Global News* (Hearst Canadian partner) smearing of Horowitz and his 528Hz frequency-based 'medicinal music' on May 13, 2018. (**Exhibit 7**)

## 2.  Defendants' Damaging Actions have been Continuous and are Ongoing.

Under the Religious Freedom Reform Act ("RFRA"), general laws burdening broadly-defined religious exercises must be: (1) supported by government's compelling interests; and (2) furthered through least restrictive means.

---

[4] Forbes Magazine's partnership in the Defendants' public/private enterprise is evidenced by **Exhibits 3 and 4**. Forbes falsely and disparagingly published on December 10, 2016, in an article titled, "Are Chiropractors Backing The Anti-Vaccine Movement?," that: "**Len Horowitz:** who describes himself as the "King of Natural Healing" and has been trying to sell an herbal cream that he claims will make skin cancer fall off your body in less than 3 weeks." Forbes linked this alleged libel to Hearst's *Popular Mechanics* feature article similarly disparaging Plaintiff, his Jewish identity, and his frequency-based religious commerce. (**Exhibit 3**)

Defendants Schein and Hearst cannot demonstrate any compelling state interest for their actions, nor can they justify those actions as the least restrictive method of mitigating some perceived harm from Plaintiff's religiously-inspired products. <u>42 U.S.C. § 1983</u>

To state a claim under 42 U.S.C. § 1983, a plaintiff must establish two essential elements: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. See *Blanton v. Griel Mem'l Psychiatric Hosp.*, 758 F.2d 1540, 1542 (11th Cir. 1985). Plaintiffs here allege both elements.

## VII. UNFAIR TRADE PRACTICES ACT (FDUTPA), F.S. §§501.201 et seq.

Defendant Schein subjected the Plaintiff to deceptive acts and unfair trade practices. There is causation between such acts or practices and the Plaintiff's damages. Plaintiff suffered actual damages with loss of health products' sales and disparaged religious commerce.

Defendants Schein's and Hearst's deceptive acts and unfair practices in violation of FDUTPA are ongoing and continuous and are being conducted with the intent to cause commercial injury to Plaintiff's businesses and goodwill in Florida, as the Defendants' violations have caused. These injuries include damage to business reputation and quantifiable loss of sales of "Oxysilver$^{TM}$ with 528" and other "528Hz/nm" product sales and services administered by the Plaintiff or his agents.

## A. IRREPARABLE HARM TO PLAINTIFF

Plaintiff seeks relief to enjoin irreparable harm to his businesses, his reputation, and his free exercise of religion, caused by Schein in coordination with Defendant Hearst

17

by and through their ongoing and continuing public disparagement of Plaintiff's businesses, products and reputation.

## B. PLAINTIFF CLAIMS NOT PREEMPTED BY FEDERAL LAW

Plaintiff brings his claims under RFRA, 42 USC 1983 and FDUTPA based on injuries he sustained personally to his religiously-inspired businesses, practices, and products (OxySilver™ and '528 frequency therapeutics,' inter alia).

## VIII. STATUTE OF LIMITATIONS

At some point, after Schein, as well as co-Defendants Pfizer (aka GSK), Moderna and Hearst Health (in partnership with WIRED/Conde Nast Health (PubWorX)) became aware that Plaintiff's unique solution to bridging the gap between biology and electronics was the most viable option, Defendants began the development of their own products. Though Schein/Hearst, as well as the other Defendants, publicly mocked Plaintiff's products and ideational approach to ag- bioelectronic hydro therapy, it was not until 2019 that Plaintiff first became aware of Defendants' intent to integrate Plaintiff's technology into their products. It was only at this time, in the context of Defendants' publicly announced intent to use Plaintiff's ideational approach to link electronics to biology, that Defendants' actual malice, in falsely disparaging Plaintiff's body of work, became actionable.

## IX. CONCLUSION

If Plaintiff's theories were simply irrational frivolous diatribe, as Defendants claim, why do they continue to attack him and his products by name in their major publications?

If Plaintiff's beliefs and practices could be so easily dismissed as "conspiracy theory," why have dozens of peer-reviewed scientific review panels accepted the Plaintiff's works for publication?

Moreover, if Plaintiff's pioneering water science discoveries, bioelectric theories, and clinical therapies enabled by frequency-emitting technologies (such as OxySilver[TM] with 528), are "fringe," "unfounded," and risky to the public, why are Defendant Schein and its partners developing similar products and services emulating Horowitz's original published discoveries?[5],[6]

---

[5] Researchers at the Massachusetts Institute of Technology ("MIT") are working to confirm Plaintiff Horowitz's unique approach of combining silver-oxygen in water (OxySilver[TM]) and "hydrogels" to administer 'frequency therapeutics.' This will enable researchers to "discover" the interface between biology and electronics, "blurring the boundary between humans and machines." See: Yuk H, Lu B and Zhao X. Hydrogel bioelectronics, In: *Chemical Society Reviews*: 6; 2019. This express purpose has been stated succinctly by Schein's PSCN founding partner Klaus Schwab, President of the World Economic Forum ("WEF").

[6] The Science:  Bioelectronic interfacing with the human body including electrical stimulation and recording of neural activities is the basis of the rapidly-growing field of neuroscience and bioengineering, diagnostics, therapeutics, and wearable and implantable devices.

Owing to intrinsic dissimilarities between soft, wet, and living biological tissues and rigid, dry, and synthetic electronic systems, the development of more compatible, effective, and stable interfaces between these two different realms has been one of the most daunting challenges in science and technology.

Recently, hydrogels have emerged as a promising material candidate for the next-generation bioelectronic interfaces, due to their similarities to biological tissues and versatility in electrical, mechanical, and biofunctional engineering. In this review, we discuss (i) the fundamental mechanisms of tissue–electrode interactions, (ii) hydrogels' unique advantages in bioelectrical interfacing with the human body, (iii) the recent progress in hydrogel developments for bioelectronics, and (iv) rational guidelines for the design of future hydrogel bioelectronics. Advances in hydrogel bioelectronics will usher unprecedented opportunities toward ever-close integration of biology and electronics, potentially blurring the boundary between humans and machines.

To avoid the undesirable trade-off between mechanical and electrical properties in metal–hydrogel composites, metallic fillers are typically introduced in the form of nanoscale particles or fibers.[104,105] For example, silver nanowires (AgNWs) have been successfully incorporated into the poly(acrylamide) hydrogel to form highly flexible micropatterned electrode arrays[104] (Fig. 10A). The conductive silver provides superior electrical conductivity, and nanoscale interactions between highly flexible AgNWs and hydrogel polymer networks allow great flexibility and low mechanical modulus comparable to the original poly(acrylamide) hydrogel.[104]

19

In short, Plaintiff's Complaint complies with the pleading requirements of the Federal Rules of Civil Procedure, Rule 8(a), and provides Defendants fair notice of the charges against them and the grounds therefor. Discovery and argument will add further detail later.

Additionally, Plaintiff has sufficiently alleged harm, and this Court, as stated herein, has subject matter jurisdiction.

Finally, pro se Plaintiff is willing, should the Court find it necessary, to amend his Complaint in order to express these claims more succinctly and identify all actors and their connections with greater specificity. Plaintiff admits his Complaint is complex, but this complexity is not due to any fault of Plaintiff, but is the responsibility of Defendants', who have expertly hid their intentions and the object of their machinations. In fairness, Plaintiff pleads that this Court not reward Defendants for their inequity, by dismissing this Complaint and denying Plaintiff due process for the harm he has suffered.

Accordingly, for the reasons set forth herein, Plaintiff respectfully requests that the Court deny Defendant Schein's Motion to Dismiss the Complaint.


Respectfully submitted.

DATED: March 29, 2021                    /s Leonard G. Horowitz
                                          Plaintiff, pro se



                                          Leonard G. Horowitz

## DECLARATION OF LEONARD G. HOROWITZ

I, LEONARD G. HOROWITZ, under pain of perjury of law, do hereby state and declare as follows:

1) I am an individual over the age of twenty-one (21) years, a resident of Lee County in the State of Florida.

2) I declare that the facts and dates stated in this Opposition filing to Defendant Henry Schein, Inc.'s Motion to Dismiss are accurate to the best of my knowledge and belief; and if called to testify before this Court on these matters, I shall do so competently.

3) I also declare that the attached evidentiary Exhibits 1 thru 21 are true and correct copies of the original documents in my possession.

Respectfully submitted.

DATED: March 29, 2021

/s Leonard G. Horowitz
Plaintiff, pro se

21

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 29th day of March 2021, I filed a true and correct copy of the foregoing "Plaintiff's Opposition to Schein's Motion to Dismiss" including Exhibits 1 thru 21, with the Court's Clerk for customary E-filing. I further certify that I served by E-Mail a copy of the filed document to the following participant(s):

ATTORNEY FOR HENRY SCHEIN, INC.
Thomas J. Cunningham
LOCKE LORD LLP
777 South Flagler Drive
East Tower, Suite 214
West Palm Beach, FL 33401
T: 561- 833-7700
http://Tcunningham@lockelord.com

ATTORNEY FOR PFIZER INC.
Brian T. Guthrie, Esquire
SHOOK, HARDY & BACON L.L.P.
100 N. Tampa St., Suite 2900
Tampa, Florida 33602
T: 813-202-7100 | F: 813-221-8837
E: bguthrie@shb.com
lcintron@shb.com
lmaranto@shb.com

ATTORNEY FOR MODERNA INC.
Nilda M. Isidro
Goodwin Procter LLP
The New York Times Building
620 Eighth Avenue, New York, NY 10018
T: 212-459-7224 | F: 646-558-4208

ATTORNEY FOR HEARST CORP.
Legal Department
Hearst Tower in Manhattan
300 West 57th Street and 959 Eighth Avenue,
New York, NY 10019
T: 212-649-2000

HONORABLE JUDGE JOHN BADALAMENTI
HONORABLE MAGISTRATE NICHOLAS MIZELL
United States District Court
for the Middle District of Florida
Ft. Myers Division U.S. Courthouse & Federal Building
2110 First St, Fort Myers, FL 33901
T: 239-461-2000

Leonard G. Horowitz, pro se

*Horowitz v. Pfizer, et. al.*; Certificate of Service for 'Plaintiff's Opposition to Schein's Motion to Dismiss.'

22