FILED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

2021 APR 12  PM 3: 31

LEONARD G. HOROWITZ,
Plaintiff,

vs.                                             Case No. 2:20-cv-00955-JLB-NPM

PFIZER INC., et al.,
Defendants.

_____/

## PLAINTIFF'S OPPOSITION TO DEFENDANT
## MODERNA's MOTION TO DISMISS

### OVERVIEW

This case pits the Plaintiff's damaged religious commerce in a claimed "vaccine and antibiotic alternative" (trademarked "OxySilver") against the Defendants' science and sales of a "novel" "genetic therapy" called the "COVID-19 vaccine". Both OxySilver and the Defendants' vaccines act therapeutically bioelectrically. Horowitz applies the "528 frequency" of sound and light, claimed to be therapeutic and the "key of the house of David" (Isaiah 22:22; Rev. 3:6-8). That frequency vibrates at the heart of sunshine and nature, and is evidenced by scientific studies to be an immune-boosting nerve-protecting antioxidant. Horowitz claims this 528 Solfeggio musical note is prophesied in the Bible to open doors to metaphysical protection and healing by the "Holy Spirit", impacting people bio-electrically and bio-spiritually (i.e., metaphysically) but not "supernaturally." Alternatively, Moderna and Pfizer manufacture their modified mRNA ("mmRNA") vaccines to supersede nature and natural immunity by directing DNA in cells to mass produce foreign proteins. These "Spike protein antigens" prompt antibody production and alleged protection by the immune system. Key in delivering Defendants' mmRNA "payload" is a "hydrogel" device that coats the genetic material and contains bioelectrically active copper (gold or silver) nano-electrodes in a lipid composite. Like OxySilver, the hydrogel is active bioelectrically, but unlike OxySilver the device can also be used to receive or transmit a wide array of bioelectrical data from within vaccinated people, a fact generally concealed from public discourse.

Horowitz claims his OxySilver is well-suited for people who distrust the Defendants' secular bioelectric drug commerce; are religious objectors; or are medically-compromised and cannot tolerate vaccines or their side effects.

Plaintiff also claims the Defendants are "state actors" that have partnerships or financial contracts with government officials, and have acted unlawfully as an "enterprise" to, inter alia, monopolize the health and therapeutic narrative, and force Plaintiff into bankruptcy in violation of the Florida Deceptive and Unfair Trade Act ("FDUTPA" as defined by Fla. Stat. § 501.204(1)); simultaneously depriving Horowitz's religious freedom and commerce secured by the Religious Freedom Restoration Act ["RFRA"] of 1993.

## I. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) must not be granted when the plaintiff is entitled to relief as a matter of law, assuming the truth of the factual allegations. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Ironworkers Local Union 68 v. Astrazeneca Pharm.*, 634 F.3d 1352, 1359 (11th Cir. 2011). Furthermore, if there is a "case or controversy" pursuant to Article III, a plaintiff stands properly, and the complaint must be adjudicated. 12(b)(1). *Fla. Family Policy Council v. Freeman*, 561 F.3d 1246, 1253 (11th Cir. 2009).

## II. PLAINTIFF'S FDUTPA CLAIMS AGAINST MODERNA ARE NOT PRECLUDED BY THE STATUTE'S "SAFE HARBOR PROVISION"

Contrary to Moderna's main argument, the Plaintiff's § 501 unfair and deceptive trade claims are not precluded by the "safe harbor provision".[1] This Article III controversy lies in damage done to Plaintiff's personal, professional, commercial, and religious interests by a claimed anti-competitive "civil conspiracy" committed by Moderna as a state actor with the Department of Defense's "DARPA" (as evidenced in **Exhibits 1, 2** and **11**) securing Defendants' monopolisitic "enterprise." Justification for this action arises from Moderna and Pfizer having:

**(1)** converted Plaintiff's bio-electric (a.k.a., 'bio-spiritual') intellectual property (commercialized between 2006 and 2008 under the trademark " 'OxySilver™' with 528" (hereafter "OxySilver") while advancing Defendants' unfair competition and monopoly over anti-

viral healthcare pursuant to modified messenger RNA ("mmRNA") and vaccines infused with nano-copper/silver/or gold crystalline composites that act as bioenergy transmitters and data-mining receivers within their hosts. This bioelectric function is accomplished by the vaccines' "hydrogel"—the genetic information delivery "device"—that is bio-electrically active, much like OxySilver is in the body. Defendants' vaccines function much like OxySilver does in the body to bring about immune protection and healing. There are many similarities and few differences. The main "unconscionable" difference, discerned by well-informed religious persons, is that OxySilver works with and through the Holy Spirit that features 528 frequency resonance, whereas Defendants' bioelectronics interferes with these natural healing modalities.

(2) Defendants acted under color of law with Moderna's financial steward—M.I.T.'s Robert Langer and the DOD's DARPA—that also partnered with Defendant Hearst (Hearst Healthcare/FirstData Bank or "FDB") and the McKesson Corp.[1] Together, the Defendants interests lie in profitable data-mining and analyzing bio-data wirelessly accessed through the hydrogel's bioelectronics in order to purportedly diagnose and treat patients' abnormal biochemistry, related illnesses, and even record recipients vaccine history and brain activity according to Defendants' publications and techno-promotions; and

(3) Defendants' enterprise relief on Hearst, and its other partners in advertising Moderna/Pfizer's "novel" bioelectric technology, in disparaging Plaintiff's academic and scientific reputation; twisting Plaintiff's religious beliefs and writings in propaganda-like

---

[1] According to Court documents, Hearst and co-conspirator McKesson "engaged in a racketeering enterprise". (**Exhibit 5**) Both McKesson and Hearst (FDB) agreed to pay millions for conspiring to overcharge Medicaid *inter alia*. McKesson manages a huge pharmaceutical and medical supply conglomerate in the U.S., and is one of the largest distributors of vaccines in the US and Europe, including both Moderna and Pfizer's vaccines, respectively. (**Exhibit 6**)

Mckesson's partner and co-conspirator "Hearst Ventures" is a key investor in Cogito—another DARPA-funded and inspired company—which is the leader in augmented "AI "—artificial intelligence. (**Exhibit 7**) In addition to kick-starting Moderna to develop its nano-gold/silver/copper hydrogel scaffolding, DARPA is also actively developing the other piece of the equation through Cogito/Tenancity, which will allow partners Hearst, Moderna, Schein and Pfizer to biosynthesize AI with human neurology. This appears to be the ultimate goal of all Defendants. Toward this end, Defendants activities (including their covert operations) coalesce at the Veteran Administration, which provides DARPA & it partner Defendants with an unquestioned steady stream of test subjects for its ongoing human trials. (**Exhibit 7**)

publications; undermining Plaintiff's scholarly affiliations and publications; demeaning the Plaintiff and the 528 frequency to damage Plaintiff's commercial markets; censoring and disparaging Plaintiff's popularity on the Internet; and undermining Plaintiff's religious and natural healing communities' support. This DARPA/Moderna/Hearst et. al 'enterprise' committed these acts because Plaintiff's 'alternative healing paradigm' competes directly and powerfully against Moderna's disease control narrative, their drug products, patented vaccines,[2] and antibiotics.

Accordingly, Plaintiff has plead an Article III case and controversy, because he has detailed is personal, professional, and ecclesiastical injury.

Furthermore, Moderna erroneously argues that the Plaintiff's FDUTPA claims are foreclosed because the U.S. Food and Drug Administration ("FDA") "issued an Emergency Use Authorization (EUA) to permit the emergency use of the ***unapproved product***, MODERNA COVID-19 VACCINE, . . ." (See: FDA's "Fact Sheet". Bold emphasis added.)

To the contrary, Fla. Stat. § 501.204(1) applies the "safe harbor" only to "[a]n act or practice required or specifically permitted by federal or state law." That "safe harbor" *does not apply to* Moderna's act and practice of converting, concealing and/or smearing Plaintiff's 528 intellectual and industrial property, nor obfuscating or concealing the company's nano-metal hydrogels' risks to society, public health and safety, juxtaposed against OxySilver's extreme safety. Horowitz reasonably objects to Moderna's: (a) vaccine hydrogel that competes against the Plaintiff's "OxySilver™ with 528"—an alternative bioelectrically-active nano-silver anti-microbial; and (b) lacking genetic safety and hydrogel testing protocols precluding necessary analyses by the FDA, encouraging unfair competition and monopolization of the COVID response by federal actors damaging the Plaintiff's OxySilver sales and benefits to society.

---

[2] Moderna's patent number US 10,703,789 B2, inter alia, describes their invention as a "primary construct or mmRNA species [that] may be combined in an aqueous solution, in the presence or absence of copper [or more costly gold and silver] to form a new covalent linkage . . ." that purportedly increases immunity against COVID-19. Similarly, OxySilver™ covalently links silver to water forming the 'primary construct' in an 'aqueous solution' that boosts immunity when consumed orally against all infectious diseases. Accordingly, the two products and approaches to disease prevention compete directly in the healthcare industry, using biochemistry and bioelectronics; but OxySilver™ does so at far less cost, virtually no risk, and allegedly greater efficacy. These facts provide clear incentive for Moderna to act with its partners and commercial privies to maliciously target the Plaintiff to deprive his OxySilver™ therapeutic narrative and multiple markets.

Notwithstanding Moderna's diversionary case law, Plaintiff does not contest Moderna's "labeling" of its drug/vaccine bottle or package. Plaintiff contests Moderna's and Pfizer's alleged "tampering" with its mmRNA genetic drug.[3] 501.001(2)(a) precludes co-conspirators from tampering "with any consumer product" or "container for," any such product. The advertised product, called the "primary construct" (mmRNA genetic material) is contained within the mysterious hydrogel. This "device" has been, to date, generally concealed (i.e., "tampered with" according to 501.001(2)(a) definitions. The mmRNA, purportedly, provides "genetic therapy" with bioelectronic activity; with additional hydrogel options of generating, transmitting, and receiving electromagnetic and bioacoustic data wirelessly from within people's bodies, according to science published by Moderna's and DARPA's leading nano-bioelectronic data-mining experts. **Exhibits 11 and 16** evidence DARPA and Moderna's Harvard and M.I.T. lead scientists, Charles Lieber and Robert Langer, who collaborated and co-published science in this field.

Pursuant to concealed discovery in this case, and similarly in official proceedings at the FDA, Plaintiff alleges and contests risks posed by hydrogel fraudulent concealments that amount to "tampering" with Moderna's mmRNA drug. The product advertised is the "primary construct"—the mmRNA "payload". Any publicly-concealed alteration violates Florida's Anti-Tampering Act 501.001(2)(a), and voids Moderna's and Pfizer's "safe harbor." By concealing the hydrogel device, and its potential risks to vaccine recipients, Moderna and Pfizer have acted "with reckless disregard for the risk that another person will be placed in danger of death or bodily injury" *Id.* § 501. Knowledgeable intent to commit this wrongdoing is evidence by the Moderna/Pfizer protocols that admittedly omit genetic safety testing, and conceal the bioelectronic hydrogel device and its risks entirely.

The "safe harbor" does not exempt these violations of law, nor drug-makers from falsely and deceptively advertising or tampering with evidence under investigation by the FDA. See § 918.13(2.)(a)(b). During the emergency use authorization ("EUA") inquiry,

---

[3] According to jury instructions provided by the Florida Bar Association, "21.8 TAMPERING WITH OR FABRICATING PHYSICAL EVIDENCE (§ 918.13 Fla. Stat.)" includes concealing any record "with the purpose to impair its . . . availability, in the investigation proceeding."

Moderna knew, or should have known, that concealing the hydrogel device falsified safety claims in reckless disregard of Florida Statute § 918.13, inter alia. With no mainstream media news coverage revealing the nano-metal bioelectric vaccine device, Moderna, Pfizer, DARPA and their partners secured the bioelectric anti-viral market, excluding OxySilver— the industry and product the Plaintiff substantially pioneered.

Also, the "safe harbor" does not permit Moderna's violations of informed consent. The risks raised by such artificial intelligence injected into human bodies, including health, safety, and privacy concerns raised by such bioelectric nano-particle energy transducers of copper (gold, or silver) in the data-mining of human health status, chemistry, physiology and metabolism that this biotechnology affords, have been neglected. By concealing these facts, the Defendants have spurred their vaccine sales and diluted OxySilver sales.

Defendants deceptive acts also include spreading the false narrative that Defendants' vaccines are more effective than Plaintiff's OxySilver, or even a placebo. This specious and presumptuous narrative outraged many experts, including the Associate Editor of the *British Medical Journal*, Peter Doshi.[4]

Defendants have also published to marginalize and discredit Horowitz as merely "a dentist" "conspiracy theorist," as Pfizer does in its motion to dismiss to bias the Court.

Accordingly, with Plaintiff's personal, commercial, and religious harm compounding, and federal actor DARPA partnered with Moderna/Hearst/FDB/McKesson officiating this unfair competition and deceptive trade, this Court has Article III subject matter jurisdiction in this state action in which injunctive relief from irreparable harm is requested.

## III. PLAINTIFF HAS STANDING TO BRING CLAIMS AGAINST MODERNA FOR VIOLATING, INTER ALIA, PLAINTIFF'S RELIGIOUS FREEDOM

---

[4] Doshi P. Peter Doshi: Pfizer and Moderna's "95% effective" vaccines—we need more details and the raw data. *The BMJ Opinion*. January 4, 2021. See also: Doshi P. Clarification: Pfizer and Moderna's "95% effective" vaccines—we need more details and the raw data. *The BMJ Opinion*. February 5, 2021.

Moderna's civil conspiracy defense falls and fails within the Defendants' bioelectronics enterprise that has transgressed its "safe harbor" and competes directly against Plaintiff's Judeo-Christian health science narrative and OxySilver. Moderna gains unjust enrichment by depriving Plaintiff's free and fair trade in competing religious commerce. Consequently, Moderna violates the Religious Freedom Restoration Act ["RFRA"] of 1993, codified at 42 U.S.C. § 2000bb through 42 U.S.C. § 2000bb-4. Evidence substantiating religious (anti-Semitic) animus directed against the Plaintiff and his 528 industry was filed in exhibits attached to Plaintiff's opposition to Defendant Schein's motion to dismiss.

Suffice it to say that the Defendants' state actions leverage Hearst's and DARPA's abusive media to compete unfairly and deceptively against the Plaintiff's OxySilver and "528 industry"—religious and commercial interests that herald the '528—key of the house of David' as intellectual property based on Bible code revelations prophesied in Isaiah 22:22 and Revelation 3:6-8. The Defendants (as co-conspirators) have smeared Horowitz to deprive the Plaintiff's religious knowledge from becoming widely known, and restricted his freedom to advance his ministry, companies, markets, products and services.

## IV. PLAINTIFF HAS STATED COGNIZABLE CLAIMS AGAINST MODERNA AND ITS PRIVIES-IN-INTEREST FOR COMPETING UNFAIRLY, DECEPTIVE, AND WITH RELIGIOUS AND RETALIATORY ANIMOUS TO DEPRIVE PLAINTIFF'S FREE AND FAIR COMMERCE.

### A. MODERNA, DARPA, and HYDROGEL BIOELECTRONICS vs. PLAINTIFF'S BIOSPIRITUALITY AND 528 FREQUENCY

It is public knowledge that Moderna received substantial financial support for the development of mmRNA vaccines through the Department of Defense ("DoD"). (**Exhibits 1 and 2**) Beginning in the 1980s to the present, the DoD and its contractors began work on what is described as the "most dauting obstacle"—bridging the gap between biology and electronics. For decades, the scientific consensus was that this gap was insurmountable, given the "stark disparities between the two realms." Then (at an undisclosed time) DARPA's contractors at Harvard and M.I.T. "hit" upon the idea of using metalized

"nanogels" to conduct electricity through biologic tissue. This science provided renewed hope to a languishing "bioelectronic" industry, that a solution to bridge the gap between biology and robotics was indeed possible.[5],[6] (**Exhibits 1 and 2**)

With DARPA seed financing assured, University researchers and transnational corporations began work to develop the "hydrogel" industry. The World Economic Forum (WEF), as cheerleader, began publishing videos and white papers heralding the imminent integration of humans with intelligent machines, made possible by the emergence of DARPA's hydrogels were well-suited for distribution via vaccines.

Proponents and critics agreed, being "human" would no longer be scientifically definable. This controversial biosynthesis was termed "transhumanism." The movement depended on the Defendants' three intertwined industries: (1) pharmaceutical developments in nano-bioelectronics such as Moderna's and Pfizer's "game changing" hydrogels enabled via vaccines; (2) bioelectronic data mining and *in vivo* (real-time) data processing and analysis for drug commerce or patient/population management; and (3) public persuasion by media partners for social acceptance.

All three of these requirements were largely met by Moderna's alliance with DARPA's partners—Hearst Healthcare, McKesson, and FirstData Bank ("FDB"). This evidences an enterprise that originally "consummated a merger that monopolized the integrated drug information database market," according to a Federal Trade Commission's ("FTC") *injunction*. (**Exhibit 3**) This alleged "racketeering enterprise," instantly "disgorged $19 million in profits" when the Moderna/Hearst/FDB/DARPA consortium was formed (according to the FTC's **Exhibit 3**). This enterprise sold government officials and society on the benefits of this bioelectronic

---

[5] Judicial Notice is brought to the fact that electricity is conducted by electrons vibrating and spinning at certain frequencies of sound and light measured in cycles-per-second in Hertz (Hz) or nanometers (nm), respectively. Bioelectricity, likewise, conducts electrons to, through, and from cells mediated by water. This hydrodynamic bioenergetic activity best describes the function of Defendants Moderna and Pfizer's nano-metal hydrogel device, as well as the Holy Spiritual dynamics fundamental to Christian Science, natural healing, and the Plaintiff's 528 silver-hydrosol infectious disease remedy.

[6] This hydro-nano-biotechnology reflects DARPA's/Defendants' most advanced bioelectronic devices enabling health status, physiological, chemical, and metabolic "data-mining" within each human being as promptly as a Google search accesses millions of files directing intelligence through the Cloud in favor of those who developed and financed the Defendants as privies-in-interest.

pharmaceutical movement. Injured war veterans who required cyborg limb replacements were sure to benefit, officials predicted.[7] (**Exhibit 2**)

Extending said enterprise's aforementioned pattern and practice of concealing important facts, on September 18, 2020, DARPA issued its first public notice confirming that the agency was investigating Moderna for "alleged failure to disclose DARPA funding support in its patented inventions." (**Exhibit 1**)

Plaintiff became aware of Defendants' transhumanist agenda in 2019, but his focus stayed on "Oxysilver™ with 528" for the benefit of humanity. Though Plaintiff became a target for vaccine industry invective, as a religious leader, a recognized expert on emerging diseases, and an outspoken critic on the misuse of vaccinations, it was not until late 2019 that Plaintiff began to understand the nature and the reason for Defendants' specific attacks on his products, his 528 frequency especially, and his Judeo-Christian ministry.

Plaintiff had published at length for years on the use and abuse of bioelectronic/biospiritual frequencies. His videos and books decrypted and resurrected ancient mystery-school mathematics, alchemy, and the Solfeggio (musical) arts and sciences.

But it was not until 2019-2021 that Plaintiff realized Defendants were not only intending to disparage his Bible code revelations, frequency research, and commercial developments, but substantially the 528 frequency that is a "key" energy in organic/natural bioelectronics and "intelligent design". It became most obvious from witnessing a pattern of Defendants' libel and censorship that the Defendants intended to deceive consumer markets, by generally concealing, misrepresenting, or demeaning Horowitz and his 528 frequency therapeutics

By studying Moderna's little-known emerging science, Horowitz witnessed a pattern. The Defendants repeatedly evaded their public duty to inform society about their hydrogel technology and its risks. Otherwise, similarities to OxySilver with 528 bioelectricity could be compared. Such concealment to restrain trade could only be discovered by reading

---

[7] **Exhibits 1** thru **4** evidence Moderna's start-up financing by DARPA agented by MIT's leading bioelectronics entrepreneur, Robert Langer, Moderna's most influential governing board member.

Moderna's patent that far exceeds lay comprehension. Therein, activating the hydrogel's data-processing and frequency-transmitting precious metals using 'modified water' is described as Horowitz had pioneered with his colleagues in 2006 through 2008 with OxySilver™. The Plaintiff had advanced this healing technology featuring 528 frequency based on his partner's 1998 Bible code revelations and related discoveries in "intelligent design," and Moderna and Pfizer appeared to be converting Horowitz's religious intelligence for secular enrichment.[8]

## 1. PLAINTIFF'S BIOELECTRIC/BIOSPIRITUAL "528" RELIGIOUS COMMERCE

Beginning in the 1980s to the present, Plaintiff has written extensively, and lectured nationally and internationally on bioelectric therapies and their synergistic effects with "structured water" ("sH2O") and nano-silver.

By 2008, this work led to Plaintiff's invention, manufacture, and worldwide distribution of "OxySilver™ with 528" that pioneered a new paradigm in clinical care and religious commerce.

OxySilver™ with 528 featured modified (structurally-engineered) water that was 'wetter' than most waters, meaning the water would carry and transmit to human cells more micronutrients, such as anti-microbial silver, as well as more electro-dynamic energy rejuvenating DNA.[9] Drug delivery was also enhanced, if and when desired, by structured micro-clustered water—a scientifically-proven fact that may be used to reduce drug intake, drug dependence, and drug side-effects.

---

[8] These alleged torts now trigger Plaintiff's prophetic warning of what will occur if this case is dismissed. Defendant Moderna and Pfizer's genetic-bioelectric technology will eventually risk human sustainability and free natural (i.e., Divine) spiritual sovereignty.

Therefore, this lawsuit is Plaintiff's best effort to inform the Court how Defendants' actions have specifically injured his religious ministry, his commercial interests, as well as to warn the world how Defendants' godless approach to biosynthesis and electro-genetics, if not curtailed, will have dire consequences for everyone, beyond those imposed with COVID-19.

[9] K. Liu, J.D. Cruzan, and R.J. Saykally, *"Water Clusters,"* Science *271*, 929 (1996) –Invited Paper. *Cover Article. For Saykally's list of 435 published articles in this field, see: http://www.cchem.berkeley.edu/rjsgrp/publications.php

This knowledge was used by Horowitz to develop OxySilver as an alternative to pharmaceuticals. He encouraged energizing structured-water ("sH$_2$O") with expressly the 528Hz/nm frequency of sound and light to bio-energetically empower myriad remedies. Horowitz helped pioneer with James Karnstadt the alkalized water movement. These outcomes of the Plaintiff's research and developments merged water chemistry with medicine, religion and biophysics, modern biochemistry and ancient alchemy.

Plaintiff's 528 frequency products and services arose from a millennial-long tradition of religious teaching and are proffered by Plaintiff (who is a Levitical Priest), based on his deep understanding of religious doctrine and the concomitant insight that understanding provides with respect to health products and services. The centrality of these religious teachings involve 'intelligent design,' nature's inherent (musical-mathematical matrix) structuring life through biophysics, organic chemistry, and molecular biology. This fact is confirmed textually in the Plaintiff's publications, and in the Tanakh, comprised of the Pentateuch (Torah), the Nevi'im (the Prophets), the Ketuvim (Writings), and in the Plaintiff's many published books.

Dozens of Plaintiff's scientific peer-reviewed publications have reached international audiences and several of his books have become best-sellers that have been quoted widely by such luminaries as President Obama's minister, Reverend Jeremiah Wright. Plaintiff's businesses, personal practices, and popularity in the international religious community have received substantial numbers of advocates. Plaintiff's "528 Radio Network" broadcasts more than a dozen stations offering different genres of music transposed into the frequency of 528Hz. This music is enjoyed for free by a large and growing international audience. The complimentary service (at 528Radio.com) is claimed to be "therapeutic" and advertises "OxySilver$^{TM}$ with 528" as a "Holy Water." From Horowitz's intertwined Bible and scientific studies, the Plaintiff claims "528" is the "key" to which King David tuned his "healing harp." Horowitz's achievements in 'frequency therapeutics' advanced nearly a decade before similar research and developments were announced by Defendants' officials.

## 2. MODERNA'S NANO-BIOELECTRICITY vs. HOROWITZ's BIOSPIRITUALITY

The Defendants' research and developments (such as hydrogels) compete directly against the Plaintiff's religious commercial interests that utilize the same, similar, or related science. (See: **Exhibits 8 - 11**.)

As made known in Plaintiff's filing to oppose Defendant Schein's Motion to Dismiss, the Defendants have been well-aware of Plaintiff's competing theology and biotechnology. It is Plaintiff's contention that Defendants' interference with Plaintiff's religious commerce was not primarily due to Plaintiff's opposition to traditional vaccine platforms (as Plaintiff initially surmised), but for the purpose of marginalizing Plaintiff's alternative health science narrative proven by the success of Plaintiff's silver-hydrosol bio-resonating 528 therapeutic technology. The benefits of using antimicrobial bioelectric silver-hydrosol technology versus the Defendants' pharmaceuticals are many.

For this reason, opposing competition, Defendants are alleged to have conspired to minimize Plaintiff's visibility, reputability, and ability to impact their carefully constructed pharmaceutical-bioelectronic narrative. Extra protection was required to advance Defendants' market for "novel" mmRNA electro-biologics—the genetic gateway to transhumanism. Defendants knew their future markets and monopolies were secured by their conversion, obfuscation, and smearing of Plaintiff's 528-resonating silver-hydrosol biotechnology and educational outreach. This interference with the Plaintiff's commercial viability and Christian Science narrative was vitally important for Moderna and Pfizer's roll-out of their competing bioelectric products.

The main difference between OxySilver and Defendants' hydrogels is not only the extensive and long-lasting reach and integration into people's bodies, minds, and souls. OxySilver does not administer data-mining, data analysis, and real time physico-chemical wireless administration/modulation of the patients' *in vivo* "health status." OxySilver does not monitor physiology, metabolism, vaccine history, nor anti-microbial chemistry foundationally and freely regulated by natural 'electro-genetics,' water science, the susceptibility of microbes to anti-oxidants, and the Holy Spirit.

The Defendants use nano-metal hydrogels to bioelectrically transmit frequencies of sound and light energy. Defendants advertised this as a remedy for myriad diseases. (See **Exhibits 8-11.**) **Exhibit 11** evidences Moderna's expert investor in this field, MIT's Robert Langer, co-publishing exceptional science in this field with Harvard's Charles Lieber.

While Defendant Moderna wishes to characterize the focus of this lawsuit as limited to COVID-19 vaccines, RFRA, 42 USC 1983 and FUDPTA questions arise from Plaintiff's 2000 copyright on the text *Healing Codes for the Biological Apocalypse* (TX0005256671/ 2000-08-09; **Exhibit 12**). That national best-selling book is largely responsible for Defendants' alleged anti-competitive activities as it delves into bioelectronics' versus Holy Spiritual dynamics.

Though Plaintiff admits that at this time Plaintiff's market share presents little concern to Defendants, the growing popularity of Plaintiff's characterization of Defendants' mis-guided approach to bioelectronic therapies constitutes an imminent and material threat to Defendants. The Plaintiff's large and growing international outreach threatens Defendants' Pandemic Supply Chain Network's plan for bioelectric medicines (**Exhibits 13**) and DARPA's promised 'early treatment' determined by "injectable biosensor technology." (**Exhibit 14**)

Given DARPA's and partnering Defendants' investments, their officials envisioned a usurpation of their profits damaging stockholders in the field of wireless bioelectronics and data-mining. This required hydrogels.

The Plaintiff made known that receiving and transmitting data wirelessly to and from cells in the brain, nerves, and immune system, purportedly to supplement "genetic therapy", is precluded by Bible law that commands the Plaintiff's alternative religious narrative, to secure the body 'temple'—home of the soul.[10] To impose upon any person's soul, religious or not, the Defendants' wireless genetic electro-dynamic biotechnologies is arguably *unconscionable*. It is

---

[10] 1 Corinthians 6:19 "[K]now ye not that your body is the temple of the Holy Ghost *which is* in you, which ye have of God, and ye are not your own?" Leviticus 19:19 "'You shall keep My statutes. You shall not let your livestock breed with another kind. You shall not sow your field with mixed seed. Nor shall a garment of mixed linen and wool come upon you."

surely incompatible with Bible laws that herald the supreme healing power of the Holy Spirit that is administered piezo-electrically, like all energy universally.[9] The general consensus still favors such theology, and the Constitutional imperative securing religious freedoms.

## B. PLAINTIFF'S CIVIL CONSPIRACY CLAIM IS JUSTIFIED BY THE FBI'S INDICTMENT OF MODERNA'S LEADING SOURCE OF HYDROGEL INTEL.

Moderna and Pfizer's mmRNA religiously-juxtaposed vaccines draw substantially on classified research conducted by Harvard's Charles Lieber and M.I.T.'s Robert Langer, who appear to have converted Horowitz's OxySilver™ bioelectric 528-frequency nano-technology to the Defendants' similarly-functioning hydrogel applications.

Obviously, with Moderna and Pfizer's chief benefactors being DARPA, the Defendants' bioelectronic drug enterprise operates largely covertly, due to concerns for "National Security." Though attacks by Defendants' competing enterprise against Plaintiff and his products began in "FY2016," it was not until 2019 that Horowitz gained solid evidence of the civil conspiracy depriving his commercial and religious rights. DARPA announced its funding of Profusa's hydrogel biosensors to detect disease outbreaks two months before the revealing "Event 201" coronavirus predictive-programming conference at Johns Hopkins. (**Exhibit 14**) That August 8, 2019 notice prompted Plaintiff to consider covert operations stemming from the National Biodefense Strategy Act (NBSA) of 2016's connections to Moderna's and Pfizer's key hydrogel bioelectronics expert, Charles Lieber, and his co-author, Robert Langer. (**Exhibit 11**) Langer is Moderna's chief financial agent and M.I.T.'s leading scientist in this field.

The Defendants' pattern and practice of fraudulently concealing vital intelligence is compounded by Lieber, who "knowingly and willfully made materially false, fictitious and fraudulent statements to DoD [and similarly to the NIH] in violation of 18 U.S.C. § 1001(a)(2)" according to his federal indictment. (See: Criminal Complaint in **Exhibit 15. Exhibits 8 thru 11** evidence Lieber's main area of Chinese espionage, according to facts under seal in *U.S. v. Charles Lieber*. (**Exhibit 15**) Lieber is considered the world's best

14

informed researcher and developer of biotechnologies called "nanoscale field effect transistors (nanoFETs)." "Field effect" means electromagnetic or bioacoustic wave energy transmitted in this instance through body water affected by the Defendants' injected hydrogels.

The first step in nanoFETs' developement includes "metalization" using gold, copper, or silver. These are the best energy-conducting elements. (**Exhibit 16**). One outcome is the development of drugs capable of "electronic signaling."[11] Lieber played a key role in developing silver, copper, or gold-infused hydrogels made to "***meld tiny electronics with the brain***," explained *NPR*. (**Exhibit 17**; emphasis added)

To neutralize the Plaintiff's bio-spiritual religious narrative (and competing interests in 528 religious commerce) thus secure the Defendants' scientific, secular, transhumanist/cyborg narrative, Lieber et. al. literally claimed his devices provided the "Holy Grail in intracellular electrophysiology." Lieber's devices promised the "exciting future application of these nanoFET probes . . . measuring membrane potentials directly from cellular organelles." This is the Defendants' "Holy Grail." (**Exhibit 16**, p. 9).

The government contracted with Lieber at Harvard and his co-author, Robert Langer at M.I.T., to partner with Moderna and other corporations to not only initiate lab endeavors to advance and secure the bioelectronics market, but also to administer media campaigns targeting religious group leaders threatening the Defendants' cyborg industry, as shown in **Exhibits 18** thru **20**. By competing against this public/private enterprise, Horowitz became an "enemy of state."

The Plaintiff and his religious community espousing alternatives to pharmaceutical narratives and "vaccination hesitancy" became targeted by the National Security State controlling DARPA, biodefense, and the Defendants' media enterprise. Aside from

---

[11] In science-speak, the objective is to build "3D macroporous biomaterials as extracellular matrices . . . [that] allow for studies of cell/tissue development in the presence of spatiotemporal biochemical stimulants(119,120), and (ii) the understanding of pharmacological response of cells within synthetic tissues." Said "stimulants" include drugs and electronic signals mediated through the water-lipid interface, superconducted by copper, gold, or silver, generating electromagnetic or bioacoustic fields that are conducted wirelessly or by "nano-wires". (**Exhibit 16**)

competing against the Defendants' hydrogel technology and vaccines, Horowitz was, and still is, considered a leading risk associated with "major biological incidents." (See: National Biodefense Strategy Act of 2016, **Exhibit 18**; religious "vaccination hesitancy" in **Exhibit 19**; and DARPA's financing of media counter-intelligence. (**Exhibit 20**)

National Security is purportedly threatened by religious evangelists, conspiracy theorists, and the politically-oppressed-and-distressed untrusting public. (**Exhibit 19**) Such enemies of state were prioritized to be neutralized, as exemplified by Horowitz's persecution. Hearst collaborator and alleged secret government agent, Colin McRoberts, fortified by his McChrystal Group cohorts, led the propaganda campaign to discredit Horowitz, according to the Plaintiff's knowledge, belief, and solid proof.

Accordingly, Plaintiff alleges the Defendants have acted to disparage and bankrupt Plaintiff by maligning his religiously-informed and bio-spiritually oriented publications and health products, reflecting the Defendants' complicity in an ongoing retaliatory state action against the Plaintiff evidencing Defendants' religious and competitive animus, and civil conspiracy to deprive Plaintiff's rights in commerce in violation of 42 USC §§ 1981 and 1983.

### C. MODERNA, PFIZER AND ALLEGED CO-CONSPIRATOR/PUBLISHER HEARST, SUBSTANTIALLY BURDENED PLAINTIFF'S FREE EXERCISE

Plaintiff has alleged the existence of a civil-conspiracy involving state actors DARPA, Moderna, Pfizer, governmental vaccine distributors Schein and McKesson, and their advertising partner and biodata administrator, Hearst (Healthcare/FDB). Together Defendants' enterprise deprived Plaintiff's civil right to fair trade in religious commerce.

"In order to prevail on a conspiracy claim under § 1983, a Plaintiff also asserts that persons acting under color of state law conspired to deprive him of a federally protected right."; *Marchese v. Umstead*, 110 F. Supp. 2d 361, 371 (E.D. Pa. 2000) ("To state a section 1983 conspiracy claim, a plaintiff must allege: (1) the existence of a conspiracy involving state action; and (2) a depravation [sic] of civil rights in furtherance of the conspiracy by a party to the conspiracy."); see also *Avery, Rudovsky & Blum*,7  Instructions 12:31, 12:32, 17

12:33, & 12:43 (providing suggested instructions regarding a Section 1983 conspiracy claim). According to the RFRA, the "[g]overnment shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability," unless the government demonstrates a "compelling governmental interest" and uses the "least restrictive means" of furthering that interest. 42 U.S.C. § 2000bb-1(a),(b); *Holy Land Found. for Relief and Dev. v. 9 Ashcroft*, 333 F.3d 156, 166-68 (D.C. Cir. 2003).

Horowitz's central religious belief is that the Holy Spirit administers healing by, most importantly, vibrating in the 528Hz/nm frequency of sound and light. To establish a prima facie case under RFRA, a plaintiff must show that the government action "has placed a substantial burden on the observation of a central religious belief or practice." *Henderson v. Kennedy*, 253 F.3d 12, 17 (D.C. Cir. 2001) The Moderna/Pfizer/DARPA/ Hearst/Schein et. al. enterprise cannot prove their actions to smear Horowitz and his 528 products to restrict his religious commerce and burden his "central religious belief" is the "least restrictive means" to serve the public's health or biodefense.

Furthermore, Defendant Moderna cannot demonstrate any compelling state interest in converting the Plaintiff's Bible-based Christian Science-backed discoveries and intellectual property into Defendants' pharmaceutical-bioelectronic hydrogel narrative.

Horowitz has stated a claim under 42 U.S.C. § 1983, and established the two essential elements: (1) The HearstHealth/FDB/DARPA/Moderna defamation and religious freedom deprivation was committed by state actors under color of state law; and (2) the conduct deprived Plaintiff's rights, privileges, and immunities secured by the Constitution or laws of the United States. *Blanton v. Griel Mem'l Psychiatric Hosp.*, 758 F.2d 1540, (11th Cir. 1985).

## V. FEDERAL SUBJECT MATTER JURISDICTION

The subject matter of this case involves federal questions per 28 USC 1331, as Defendant Moderna and its privies-in-interest, including DARPA, under color of law, overstepped their "safe harbor" protection, interfered with Plaintiff's religious commerce,

disparaged Plaintiff's Judeo-Christian identity and 528 industry, smeared Plaintiff's bioelectric/biospiritual products competing against Moderna's and Pfizer's hydrogel devices, and deprived Horowitz of his free and fair trade. These acts violate the First Amendment of the Constitution, the Religious Freedom Restoration Act of 1993 (codified at 42 U.S.C. § 2000bb through 42 U.S.C. § 2000bb-4; and civil rights statutes 42 U.S.C. §§ 1981 and 1983.

Though this matter raises both state and federal issues, Plaintiff contends the hybrid law issue should be resolved in favor of federal jurisdiction, given Defendants' violations of Plaintiff's constitutional rights supersede Plaintiff's state claims. Additionally, the weight of federal authority is that when fairness dictates claims against federal actors, such as evidenced in this case with DARPA substantially financing and administratively furthering Moderna's hydrogel and vaccine commerce, they should be adjudicated in federal court.

The court may dismiss a complaint for lack of subject-matter jurisdiction only if "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Empagran S.A. v. F. Hoffman-Laroche, Ltd.*, 315 F.3d 338, 343 (D.C. Cir. 2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

## VI. PLAINTIFF HAS ADEQUATELY STATED COGNIZABLE CLAIMS AGAINST MODERNA TO SATISFY FED. R. CIV. P. 8(a)(2) OR OTHERWISE PERMIT AMENDING THE COMPLAINT

The Supreme Court has explained that a complaint need only "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema* N.A., 534 U.S. 506, 512 (2002); accord *Atchison, Topeka & Santa Fe Ry. v. Buell*, 480 U.S. 557, 568 n.15 (1987) (under Federal Rule 8, claimant has "no duty to set out all of the relevant facts in his complaint"). "Specific facts are not necessary in a Complaint; instead, the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Epos Tech.*, 636 F. Supp.2d 57, 63 (D.D.C. 2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)).

As Florida courts have consistently held, *Twombly* and *Iqbal* do not change the fundamental analysis that a district court engages in, when ruling on a motion to dismiss, i.e.,

accepting all plausible allegations as true and determining whether the complaint contains a short and plain statement of the claim showing that the pleader is entitled to relief. *Smith v. Wm. Wrigley Jr. Co.*, 663 F.Supp.2d 1336, 1341 n. 3 (S.D. Fla. 2009).

The issue for consideration on a motion to dismiss is not whether the plaintiff will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." *Little v. City of North Miami*, 805 F.2d 962, 965 (11th Cir. 1986). If a defect can be cured by amendment, leave to amend should be freely granted. *Forman v. Davis*, 371 U.S. 178, 182 (1962); *Ferrell Law, P.A. v. Crescent Miami Center, LLP*, 313 Fed. Appx. 182, 186 (11th Cir. 2008); Fed. R. Civ. P. 15(a)(2) Thus, the Federal Rules embody "notice pleading" and require only a concise statement of the claim, rather than evidentiary facts. Accordingly, Defendant's Motion would be properly filed only "where a plaintiff's complaint is 'unintelligab[le] (sic),' not where a complaint suffers for 'lack of detail.'" *Epos Tech.*, 636 F. Supp. 2d at 63 (citations omitted).

## A. PLAINTIFF CLAIMS STATE ACTOR MODERNA, UNDER COLOR OF LAW, DEPRIVED PLAINTIFF OF HIS RELIGIOUS FREEDOM IN COMMERCE

Plaintiff claims Moderna's enterprise with federal agents and agencies, especially DARPA, and private companies, including Hearst Healthcare/ FDB/McKesson and others, acted to deprive Horowitz of his civil rights to commercialize OxySilver and 528 healing technologies. 42 U.S.C. § 1983 (2000) imposes liability on every person who, under the color of a statute, ordinance, or regulation, causes the deprivation of another's federally protected right. Moderna acted with the "authority of [the] state." In this case, governmental entities and private parties together acted to deprive the Plaintiff of his constitutionally guaranteed liberty. See 14 C.J.S. Civil Rights § 30 (2007).

The Supreme Court noted that the determination of whether conduct is private or amounts to "state action" is not an easy question and there is no singular fact that is a "necessary condition.., for finding state action." The important inquiry, therefore, is the interplay of the government and private actions in light of the particular facts of a case.

*Gilmore v. City of Montgomery*, 417 U.S. 556, 573 (1974) (citing *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 725 (1961)).

Here, Defendant Moderna is a state actor for satisfying the 'three exceptions' to the 'State Action Doctrine.' Those exceptions are *public function*, *entanglement*, and *entwinement*. (*Milner v. Plukerbert*, Supreme Court of the United States, No. 17-874, Brief for Respondent, January 31, 2020.) The facts, corroborated by **Exhibits 1 thru 3,** trigger the three exceptions, and justify treating Moderna as the government itself. Indeed, in this instance, the U.S. Government is entangled and entwined with Moderna as a "public function" in bio-preparedness and remedial response to infectious diseases. Here, as the facts and exhibits show, federal officials take credit for financing and stewarding Moderna's and Pfizer's nano-bioelectronic vaccine hydrogels as disease therapies and more.

In addition, DARPA has heralded its exploitation of Big Tech's media messaging capabilities to influence public opinion and acceptance of Moderna/Pfizer's "novel" bioelectric technologies. DARPA's media influence also compounds evidence of the Defendants' anti-religious vaccine hesitancy campaign damaging the Plaintiff and many others in many ways, including depriving Horowitz of his constitutional right to the free exercise of his religious commerce in the bio-electric, bio-spiritual, and bio-defense field. **(Exhibits 19 and 20)**

## B. IRREPARABLE HARM TO PLAINTIFF

Plaintiff seeks relief to enjoin compounding irreparable harm to Horowitz, his businesses, his reputation, and his free exercise of religion, caused by Moderna's complicity with the other Defendants, by and through continuing disparagement, censorship, and propaganda campaigns, causing said damage.

In fairness, Plaintiff pleads that this Court not reward Defendants for their inequity, by dismissing this Complaint and denying Plaintiff's due process for the harm he has suffered.

Respectfully submitted.

DATED: April 12, 2021                              /s Leonard G. Horowitz
                                                   Plaintiff, pro se


                                                   Leonard G. Horowitz

## DECLARATION OF LEONARD G. HOROWITZ

I, LEONARD G. HOROWITZ, under pain of perjury of law, do hereby state and declare as follows:

1) I am an individual over the age of twenty-one (21) years, a resident of Lee County in the State of Florida.

2) I declare that the facts and dates stated in this Opposition filing to Defendant Moderna's Motion to Dismiss are accurate to the best of my knowledge and belief; and if called to testify before this Court on these matters, I shall do so competently.

3) I also declare that the attached evidentiary Exhibits 1 thru 20 are true and correct copies of the original documents in my possession.

Respectfully submitted.

DATED: April 12, 2021

/s Leonard G. Horowitz
Plaintiff, pro se

22

# ADDENDUM

According to a DARPA press release, beginning in 2011, the DoD's "ADEPT" program (i.e., Autonomous Diagnostics to Enable Prevention and Therapeutics) "began investing in nucleic acid vaccines." (**Exhibit 2**) This effort included "rapidly manufacturing new types of vaccines . . . novel tools to engineer mammalian cells for targeted drug delivery and . . . novel methods to impart near-immediate immunity to an individual using antibodies."

Then Moderna, by direction of Moderna's co-founder, co-owner, and secretive CEO billionaire Stéphane Bancel, and his business advisor and senior board member, M.I.T. scientist Robert Langer, (**Exhibit 11**) along with Langer's counterpart at Harvard, Charles M. Lieber, (**Exhibits 10 and 16**) began receiving generally secreted financing from the U.S Government (**Exhibits 1, 2 and 22**) and private investors including vaccine and wireless neuroscience cheerleader, Bill Gates.[12]

A year later, in 2012, Langer and Lieber's team published a ground-breaking paper in *Nature Materials* describing their breakthrough in technology enabling "merging tissue with electronics in a way that it becomes difficult to determine where the tissue ends and the electronics begin."[13]

M.I.T.'s Media Lab is publicly known for administering this extraordinary bioelectric technology. Their "Nano-implants for energy harvesting and wireless sensing" advances as evidenced in **Exhibit 22**, intertwine with Moderna's nano-bioelectric vaccine hydrogels.

Defendant Moderna thus competes against OxySilver™ with 528 energy bioresonance (See: **Exhibit 11**.); does so under color of law; and while doing so deprives Plaintiff of his constitutional right to the free exercise of his religious commerce in the bio-electric, bio-spiritual, and bio-defense fields.

---

[12] Tracy M and Hsu T. Director of M.I.T.'s Media Lab Resigns After Taking Money From Jeffrey Epstein, *New York Times*, September 7, 2019. "[I]ncluding a $2 million gift from the Microsoft co-founder Bill Gates. . . 'directed by Jeffrey Epstein.'"

[13] Tian B, Langer R and Lieber CM, et. al. Macroporous nanowire nanoelectronic scaffolds for synthetic tissues. *Nature Materials*, August 26, 2012; with quotes from Lieber reported in *ScienceDaily*. See **Exhibits 16 and 22**.

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 12th day of April 2021, I filed a true and correct copy of the foregoing "Plaintiff's Opposition to Moderna's Motion to Dismiss" including Exhibits 1 thru 20, with the Court's Clerk for customary E-filing. I further certify that I served by E-Mail a copy of the filed document to the following participant(s):

ATTORNEY FOR HENRY SCHEIN, INC.
Thomas J. Cunningham
LOCKE LORD LLP
777 South Flagler Drive
East Tower, Suite 214
West Palm Beach, FL 33401
T: 561- 833-7700
http://Tcunningham@lockelord.com

ATTORNEY FOR PFIZER INC.
Brian T. Guthrie, Esquire
SHOOK, HARDY & BACON L.L.P.
100 N. Tampa St., Suite 2900
Tampa, Florida 33602
T: 813-202-7100 | F: 813-221-8837
E: bguthrie@shb.com
lcintron@shb.com
lmaranto@shb.com

ATTORNEY FOR MODERNA INC.
Nilda M. Isidro
Goodwin Procter LLP
The New York Times Building
620 Eighth Avenue, New York, NY 10018
T: 212-459-7224 | F: 646-558-4208

ATTORNEY FOR HEARST CORP.
Legal Department
Hearst Tower in Manhattan
300 West 57th Street and 959 Eighth Avenue,
New York, NY 10019
T: 212-649-2000

HONORABLE JUDGE JOHN BADALAMENTI
HONORABLE MAGISTRATE NICHOLAS MIZELL
United States District Court
for the Middle District of Florida
Ft. Myers Division U.S. Courthouse & Federal Building
2110 First St, Fort Myers, FL 33901
T: 239-461-2000

Leonard G. Horowitz, pro se

*Horowitz v. Pfizer, et. al.*; Certificate of Service for 'Plaintiff's Opposition to Moderna's Motion to Dismiss.'