UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LEONARD G. HOROWITZ,

    Plaintiff,

v().                                              Case No:  2:20-cv-955-JLB-NPM

PFIZER INC., HEARST CORPORATION,
MODERNA INC., HENRY SCHEIN, INC.,

    Defendants.
_____

## ORDER

Dr. Leonard Horowitz, proceeding <u>pro se</u>, has sued Pfizer Inc., Moderna Inc., Henry Schein, Inc. ("Schein"), and The Hearst Corporation ("Hearst"). (Doc. 1.) But the nature of his Complaint makes it almost impossible to determine what, exactly, he has sued them for. Although each Defendant has moved to dismiss on various grounds, all agree that Dr. Horowitz has filed an impermissible shotgun pleading. (Docs. 48, 54, 56, 63.) And they are correct. The Complaint spans some 340 paragraphs across 90 pages and teems with vague, conclusory, and immaterial allegations seemingly unrelated to any legal theory for which Dr. Horowitz seeks redress. Those legal theories (and the parties he seeks to hold liable) change page by page, filing by filing, further preventing the Court from reaching the merits of Defendants' motions to dismiss in any meaningful way. Simply put, the Court cannot make heads or tails of the pleading. Accordingly, the Complaint (Doc. 1) is **DISMISSED** without prejudice.

## APPLICABLE LEGAL STANDARDS[1]

Dr. Horowitz is proceeding without legal counsel. "A document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). Even so, the Supreme Court has "never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel." McNeil v. United States, 508 U.S. 106, 113 (1993); Moon v. Newsome, 863 F.2d 835, 837 (11th Cir. 1989) (pro se litigants "subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure"). Thus, while the Court must liberally construe Dr. Horowitz's filings, it cannot act as his de facto counsel by rewriting them. GJR Invs., Inc. v. Cnty. of Escambia, 132 F.3d 1359, 1369 (11th Cir. 1998), overruled on other grounds by Ashcroft v. Iqbal, 566 U.S. 662 (2009).

A pro se party may violate the Federal Rules of Civil Procedure by filing a shotgun pleading. A shotgun pleading may be a complaint that: (1) is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; or (2) "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or

---

[1] The Court would ordinarily begin by summarizing the Complaint's facts, taken as true at this juncture. However, given the Complaint's confused organization, and the harms Dr. Horowitz alleges, the Court finds it instructive to begin with the legal standards governing the construction of the Complaint.

omissions, or which of the defendants the claim is brought against." Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1322–23 (11th Cir. 2015). "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." Id. at 1323.

To survive Defendants' motions to dismiss, the Complaint must contain sufficient factual allegations to state a claim for relief that is facially plausible. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). Detailed factual allegations are unnecessary, but Rule 8(a) requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (citing Twombly, 550 U.S. at 555). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557).

And while the Court must accept well-pleaded facts as true, it need not accept legal conclusions. Iqbal, 556 U.S. at 678. The Court readily makes reasonable inferences in Dr. Horowitz's favor, but it is "not required to draw [his] inference. Bald assertions will not overcome a Rule 12(b)(6) motion . . . [and] unwarranted deductions of fact are not admitted as true in a motion to

dismiss." Aldana v. Del Monte Fresh Produce, N.A., Inc., 416 F.3d 1242, 1248 (11th Cir. 2005) (citations omitted); see also Iqbal, 556 U.S. at 681 (conclusory allegations "not entitled to be assumed true"). Finally, the Court should limit the scope of its review to the four corners of the Complaint and will not consider any new factual allegations or legal theories that Dr. Horowitz raises in his responses (see Docs. 58, 61, 64, 69), as he has not moved under Rule 15 to amend his pleading. See St. George v. Pinellas Cnty., 285 F.3d 1334, 1337 (11th Cir. 2002) (citing Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000)).

## DISCUSSION

The opaque, conclusory nature in which Dr. Horowitz has alleged Defendants' liability makes his Complaint extraordinarily difficult to parse. As best the Court can tell, Dr. Horowitz is pursuing two overarching harms. The first involves Dr. Horowitz's loss of income as a result of Defendants conspiring to discredit him and his healthcare products in favor of their own. The second seems to be a general grievance on behalf of the public at large which may (or has) suffer(ed) injury because of what he believes are unsafe COVID-19 vaccines.

**I.     Background**

**A.     The Smear Campaign**

Dr. Horowitz is a "retired doctor of medical dentistry and oral surgery" and a "Levitical priest by bloodline." (Doc. 1 at 8, ¶ 1.) He created and brought to market a product called "OxySilver with 528" ("OxySilver") which purportedly uses light and sound frequency to provide consumers with therapeutic benefits. (See id.

at 20–21, ¶¶ 66–70.)   He describes OxySilver as an "alternative to antibiotics and COVID-19 vaccines" given its "broad-spectrum anti-viral and anti-bacterial" properties.   (Id. at 7 & 21, ¶ 69.)   Furthermore, because of his scientific and religious beliefs, Dr. Horowitz's work, he contends, has "substantially contributed to 'vaccine hesitancy.'"   (Id. at 7.)   Dr. Horowitz alleges Defendants engaged in a concerted and on-going campaign to defame, discredit, and smear him and his products.   Due to this conspiracy, OxySilver "sales plummeted from approximately $1 million annually between 2008 to 2010, to less than $200,000.00 in 2011, 2012 and forward."   (Id. at 23, ¶ 76.)

But he offers no facts explaining how Defendants did that.   Instead, he pivots to allegations of an unholy union between "Big Tech" and "Big Pharma" which implicates the likes of Google, YouTube, Facebook, Wikipedia, the Bill & Melinda Gates Foundation, MSNBC, NBC, ABC News, CNN, the McChrystal Group, the Poynter Institute, the CIA, the United Kingdom's GCHQ, and many, many others.   (See, e.g., Doc. 1 at 23, ¶¶ 78–79; 53, ¶ 160; 80, ¶ 288.)   He contends that Dr. Anthony Fauci, M.D. stood to benefit from and participated in this ongoing conspiracy.   (See id. at 63–65.)   According to Dr. Horowitz, these actors censored him on social media and published statements making him out as a conspiracy theorist.   The "why" also fluctuates depending on the specific paragraph of the Complaint—Defendants are either working to "defend pharmaceutical-industry interests [and] protect their markets," or they are conspiring with the government "for public health and national security reasons."   (Id. at 7; 23, ¶ 80.)

In any event, Dr. Horowitz alleges all Defendants are liable for the actions of each other and their cohorts because of prior business dealings and because they share the same institutional investors and shareholders. (Id. at 14–15; 27, ¶ 100.)

### B. COVID-19 Vaccines

Dr. Horowitz spends as many pages of his Complaint detailing his belief that COVID-19 was "developed in a lab." (Doc. 1 at 31–35.) And despite alleging Defendants' "co-conspirators and scammers included government agents and agencies," (id. at 80–81, ¶ 291), Dr. Horowitz confusingly alleges Defendants also defrauded the FDA and the general public when they made false advertisements about the safety and efficacy of their COVID-19 vaccines, (id. at 35–52). He "researched and analyzed the PFIZER [sic] and MODERNA [sic] research protocols," concluding that statements promoting the vaccines were "false and misleading pursuant to safety assurances." (Id. at 1, n.1.) Ostensibly, this is because Defendants are engaged in a "scheme and conspiracy to defraud the federal government and society by falsifying COVID-19 safety averments in favor of Defendants' alleged monopoly." (Id. at 16, ¶ 48.)

### C. Legal Theories

Against this backdrop, Dr. Horowitz raises claims for: (1) violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201–.213; (2) tortious interference; (3) civil conspiracy; (4) retaliatory personnel action under Fla. Stat. § 448.102(3); and (5) injunctive relief. These, however, are merely what he titles his various claims. Dr. Horowitz also indiscriminately

references violations of other laws, including: (1) Florida's private Whistleblower Act; (2) the Religious Freedom Restoration Act; (3) criminal conspiracy to defraud the United States, 18 U.S.C. § 371; (4) "RICO"; (5) "the FTC Act," 15 U.S.C. § 52; and (6) Florida's Antitrust Act—just to name a few.  Exacerbating the problem, his responses allege new theories such as a claim under 42 U.S.C. § 1983. (See, e.g., Doc. 1 at 5, 15–16; Doc. 61 at 16.)

## II.   Shotgun Pleading & Article III Standing

### A.   Shotgun Pleading

To put it bluntly, Dr. Horowitz's Complaint is a textbook shotgun pleading. It fails to distinguish between Defendants' conduct and lacks facts detailing which party took what action and when.  For example, the Complaint alleges that Wikipedia (a nonparty) deleted Dr. Horowitz's online biography on April 30, 2008.  (Doc. 1 at 22, ¶ 73.)  But nothing ties Defendants to this action.  Instead, the Complaint generally references "online agents and media provocateurs presumably allied with Defendants," (id. at 22, ¶ 74), and "an extensive propaganda enterprise commissioned by the Defendants['] privies-in-interest," (id. at 26, ¶ 93). To be fair, Dr. Horowitz attempts to show some sort of common thread among the parties and their cohorts, but this assumption of shared liability relies on tangential, thrice-removed connections based on alleged business partnerships in unrelated ventures.  (See, e.g., id. at 22–23.)

As an example, Count VII is for retaliatory personnel action under Fla. Stat. § 448.102(3).[2] Dr. Horowitz alleges Schein fired him in 1993 but does not allege he ever worked for the other named Defendants. Yet he seeks to hold them all "comparatively liable for 'retaliatory personal action' under Florida law." (Doc. 1 at 84–85.) The problem is Dr. Horowitz has simply lumped Defendants together and, at best, pleaded facts that are "merely consistent with" Defendants' liability. Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). Because of the many irrelevant factual allegations, Dr. Horowitz's incorrect and impermissible reliance on legal conclusions of shared liability, and the Complaint's failure to differentiate between Defendants, the Court finds that "it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." Anderson v. Dist. Bd. of Trs., 77 F.3d 364, 366 (11th Cir. 1996).

## B.  Article III Standing

These failings, as Defendants rightly point out, also implicate the Court's subject matter jurisdiction in at least two ways. First, Dr. Horowitz must allege a "concrete and particularized" injury that affects him in a personal and individual way. Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992). He does not claim that he ever received Pfizer or Moderna's COVID-19 vaccines, or that he relied on their statements about the same in any way. Rather, a portion of his Complaint seeks to vindicate consumers who "have suffered and will continue to suffer injuries as a

---

[2] Florida prevents an employer from retaliating against an employee because the employee has "[o]bjected to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation." Fla. Stat. § 448.102(3).

result of Defendants' false safety assurances" over the vaccines.  (See, e.g., Doc. 1 at 61.)  But this is not an alleged class action lawsuit.  Nor has Dr. Horowitz alleged any associational standing.  And there are otherwise no facts showing that it is appropriate for Dr. Horowitz to litigate such a nebulous injury on behalf of the public at large.

Second, Dr. Horowitz's own alleged harms are not traceable to Defendants' conduct as pleaded.  The Complaint must set forth some sort of causal connection between Dr. Horowitz's alleged harms and Defendants' conduct.  Put differently, Dr. Horowitz's alleged injuries must be "fairly traceable" to what he claims Defendants did rather than "the independent action of some third party not before the [C]ourt."  Lujan, 504 U.S. at 561 (quotation omitted).  Here, Dr. Horowitz claims that Defendants' actions caused sales of OxySilver to plummet "[b]etween 2009 and 2012."  (Doc. 1 at 76, ¶ 265.)  Once again, the Complaint never states what specifically the named Defendants did that caused this purported decline. Dr. Horowitz is trying to hold Defendants liable for the actions of third parties not before the Court without first pleading facts that establish a connection between those parties and Defendants.  To the extent that the Complaint does note Defendants' specific conduct—Pfizer and Moderna's statements about vaccine safety and efficacy in 2020 and a Hearst article published in 2016—the Court fails to see how those actions caused a decline in OxySilver's sales beginning in 2009.  The timeline does not work.

Although Defendants have raised various, facially meritorious defenses to the Complaint, the Court is not sure it can even entertain those defenses.³ The Court, despite Defendants' urging, cannot dismiss any of the claims with prejudice because it cannot reach the merits of a claim without jurisdiction. See Kennedy v. Floridian Hotel, Inc., 998 F.3d 1221, 1235 (11th Cir. 2021). At bottom, Dr. Horowitz must amend his Complaint—this much is clear.

### III. Leave to Amend

Perhaps anticipating this conclusion, Dr. Horowitz has offered "to amend his Complaint in order to express these claims more succinctly and identify all actors and their connections with greater specificity." (Doc. 58 at 23.) The Court should provide a plaintiff with at least one opportunity to amend a deficient shotgun pleading. Vibe Micro, Inc. v. Shabanets, 878 F.3d 1291, 1295 (11th Cir. 2018). This, of course, is subject to reasonable conditions and limitations, meaning even the leniency afforded pro se litigants cannot extend indefinitely. See, e.g., Lampkin-Asam v. Volusia Cnty. Sch. Bd., 261 F. App'x 274, 276 (11th Cir. 2008) (dismissing pro se plaintiff's pleading, with prejudice and after amendment, for being a "labyrinth of claims, counts, accusations and repetition").

---

³ For example, Schein notes that the statute of limitations seems to bar Dr. Horowitz's retaliatory employment claim occurring some twenty-seven years ago. (Doc. 48 at 11–12.) Pfizer and Moderna note they may enjoy immunity for their actions pursuant to the FDUTPA's Safe Harbor provision under Fla. Stat. § 501.212(1). (Doc. 54 at 15–20; Doc. 56 at 5–9.) And Hearst points out that the FDUTPA applies only to commercial speech, which its publication is not. (Doc. 63 at 13–14.)

So even though Defendants have raised seemingly meritorious defenses to <u>this</u> pleading, it remains to be seen whether the same will hold true after Dr. Horowitz has been given a chance to cure the deficiencies this Order identifies.[4] The Court thus takes this opportunity to identify specific deficiencies with the Complaint. Dr. Horowitz is warned that if his amended pleading suffers from the same shortcomings, the Court will dismiss this matter with prejudice and entertain requests from Defendants for their attorneys' fees and costs incurred in defending this lawsuit. (<u>See, e.g.</u>, Doc. 63 at 25.)[5]

First, "[w]ithout more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." <u>Twombly</u>, 550 U.S. at 556–57. Dr. Horowitz fundamentally misunderstands what agreements can support agency, enterprise, or conspiracy liability so that he may hold one Defendant liable for the actions of another.[6] It is not enough for him to show that Defendants had some sort of

---

[4] The Court is not prepared to find that amendment would be futile and ignores Defendants' labeling of Dr. Horowitz as a conspiracy theorist. <u>Cf.</u> <u>Twombly</u> 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote or unlikely." (citation and internal quotation omitted)); <u>see also</u> <u>Neitzke v. Williams</u>, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations.").

[5] Florida Statute § 768.295, Florida's anti-SLAPP statute, for example, provides for a <u>mandatory</u> award of attorneys' fees to a defendant who files a claim that is "without merit" and "primarily because" the defendant "has exercised the constitutional right of free speech in connection with a public issue."

[6] General business agreements (<u>see, e.g.</u>, Doc. 69 at 8) cannot give rise to shared liability for Dr. Horowitz's alleged harms unless those agreements themselves were "to do an unlawful act or do a lawful act by unlawful means" the furtherance of which harmed Dr. Horowitz. <u>Rey v. Philip Morris, Inc.</u>, 75 So. 3d

agreement, at some point in time, unrelated to the harms he is alleging.  Put differently, "it is not enough to show that the coconspirator reached some undefined or unrelated agreement with the tortfeasor, as a plaintiff must show that the agreement was the obtaining of a particular objective, and that the act taken in furtherance thereof caused the plaintiff's injury."  16 Am. Jur. 2d Conspiracy § 53, Westlaw (database updated August 2021).  And this is not something that can be vaguely alleged in a conclusory manner.  "If [Dr. Horowitz] himself cannot offer a coherent explanation for how the joint venture was structured, [the Court] cannot expect the defendants to do it for him by digging through [90] pages and [340] numbered paragraphs of scattershot factual allegations."  Barmapov v. Amuial, 986 F.3d 1321, 1326 (11th Cir. 2021).

Second, Dr. Horowitz should take care to include only those legal theories and violations of law that he believes are necessary.  An indiscriminate recitation of any seemingly related statute serves only to obfuscate his pleading.

Third, Dr. Horowitz should include all relevant parties as named Defendants in his amended complaint.  The Court notes that his responses often identify new individuals whom he addresses almost more than the actual Defendants before the Court.  Without a pleaded connection to the named Defendants, the Court will disregard any such allegations.

---

378, 381 (Fla. 3d DCA 2011) (discussing elements of civil conspiracy under Florida law).

Finally, the Court advises Dr. Horowitz to seriously consider the purpose of his suit and whether such grievances are amenable to the judicial process.[7] The Court pauses to emphasize the following point: Hearst has raised the notion that Dr. Horowitz may be litigating this action in bad faith. (See Doc. 63 at 27 n.5.) The Complaint references a September 2016 Popular Mechanics article which Hearst published. (Doc. 1 at 28, ¶ 105.) Dr. Horowitz attaches the article as Exhibit 1 in his response to Hearst's motion to dismiss. (Doc. 69-1.)[8] There, it is reported that Dr. Horowitz confronted the author and said, "I just want you to know that if you degrade and disparage me and libel me in your article . . . I will devote everything I have to exposing Popular Mechanics and the people behind it." (Id. at 12.) In opposing Hearst's request for fees, Dr. Horowitz asks that the Court not punish him "for making good on his promise." (Doc. 69 at 27.)

To be perfectly clear, the Court is not finding one way or the other whether Dr. Horowitz is litigating this action in bad faith. Nor does the Court raise this issue to discourage Dr. Horowitz from amending his Complaint—it is his constitutional right to petition the courts for redress and this Court's duty to ensure that Dr. Horowitz is afforded due process. But the above remarks, combined with

---

[7] In Dr. Horowitz's own words, "[T]his lawsuit is Plaintiff's best effort to inform the Court how Defendants' actions have specifically injured his religious ministry, as well as to warn the world how Defendants' godless approach to biosynthesis, if not curtailed, will have dire consequences." (Doc. 58 at 5–6 (emphasis added).)

[8] The Court may consider this article on a motion to dismiss without converting the matter into summary judgment because the Complaint refers to it, and it is central to Dr. Horowitz's claims. See Hoffman-Pugh v. Ramsey, 312 F.3d 1222, 1225 (11th Cir. 2002).

the fact that Dr. Horowitz is alleging Defendants' conduct in 2016 and 2020 caused a decline of OxySilver sales several years **before** (in 2009), is alarming.

The Court reminds Dr. Horowitz that his pro se status does not insulate him from the requirement that any pleading or paper not be presented for an improper purpose, such as harassing an opposing party.  See, e.g., Fed. R. Civ. P. 11(b)(1); Thomas v. Evans, 880 F.2d 1235, 1240 (11th Cir. 1989) ("Rule 11 applies to pro se plaintiffs, but the [C]ourt must take into account the plaintiff's pro se status when determining whether the filing was reasonable.").

Accordingly, it is **ORDERED**:

1. The Complaint (Doc. 1) is **DISMISSED WITHOUT PREJUDICE** to Dr. Horowitz filing an amended pleading consistent with this Order and the applicable Federal Rules of Civil Procedure.

2. The accompanying motions for judicial notice (Docs. 55, 57, 62, 72, 76, 80) are **DENIED AS MOOT** and **without prejudice** to the parties' abilities to renew them, if appropriate, after the filing of an amended complaint.  Dr. Horowitz is admonished that he should refrain from filing any frivolous motion for judicial notice that does not directly relate to the material allegations of his amended pleading.

3. **On or before September 9, 2021**, Dr. Horowitz is **DIRECTED** to file an amended pleading consistent with this Order.  Dr. Horowitz is hereby warned that his failure to comply fully and meaningfully with this Order will result in the dismissal of this action.  Furthermore, if

       Dr. Horowitz is litigating this dispute in bad faith, the Court may impose appropriate sanctions including, but not limited to, an award of Defendants' reasonable attorneys' fees.

4. Defendants' motions (Docs. 48, 54, 56, 63) are **DENIED WITHOUT PREJUDICE** to the extent they seek any greater or different relief than this Order grants.

**ORDERED** at Fort Myers, Florida, on August 19, 2021.

                                                       */s/ John L. Badalamenti*
                                                       JOHN L. BADALAMENTI
                                                       UNITED STATES DISTRICT JUDGE